Walter C. Noyes, as Receiver of The Chicago, Rock Island and Pacific Railroad Company, Plaintiff, *v.* First National Bank of New York, Defendant.

First Department, November 9, 1917.

**Banks and banking — special deposit by corporation to meet interest coupons on bonds creates relation of debtor and creditor — deposit not impressed with trust in favor of coupon holders — right of receiver of corporation to recover balance of said deposit.**

A deposit of moneys by a corporation in special accounts to meet interest coupons on bonds as they become due, the interest to be paid directly to the holders of the coupons by the depository out of the funds so deposited, creates merely the relation of debtor and creditor, and does not constitute the depository a trustee or impress upon the money in its hands a trust in favor of the coupon holders.

Hence, a receiver of said corporation appointed by a Federal court in a creditor's suit subsequent to the opening of such special accounts, is entitled to recover the balance thereof in the possession of the depositor.

Submission of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Walter C. Noyes,* for the plaintiff.

*Joseph M. Hartfield,* for the defendant.

SCOTT, J.:

The plaintiff is the receiver of the Chicago, Rock Island and Pacific Railroad Company (hereinafter called the railroad company) appointed by a United States District Court in a creditor's suit. The defendant (hereinafter called the bank) is a National bank transacting business and having its offices in the city of New York.

The controversy has to do with the right to the possession of certain moneys deposited by the railroad company with the bank before the appointment of the receiver and which still remain on deposit. Very briefly stated the circumstances attending the deposit, or rather the deposits, for there were more than one, are as follows:

On or about November 1, 1902, and at various times subsequent thereto the railroad company issued four per cent gold bonds payable in the year 2002 and known as the bonds of 2002, and to secure the payment of said bonds and the interest thereon executed and delivered a trust agreement to the Central Trust Company of New York as trustee.

On or about July 1, 1903, and at various times thereafter the railroad company issued five per cent gold bonds payable in the year 1913, and known as the bonds of 1913, and to secure the payment of said bonds and the interest thereon executed and delivered a trust agreement to the Central Trust Company of New York as trustee.

Certain of the bonds of both of those issues were registered and on the interest dates, which occurred semi-annually, the amounts due for interest upon these bonds were sent directly to the several registered holders of such bonds. The great majority of both issues of bonds were what is known' as coupon bonds and the interest was paid semi-annually upon the presentation of the appropriate coupons. The said bonds and coupons were held by companies, firms and individuals throughout the United States and in foreign countries. Until September 1, 1905, the payments of interest upon both the registered and the coupon bonds were made by the railroad company at its office in New York. Prior to

that date the railroad company had maintained a general account in the bank.

On September 1, 1905, the railroad company opened a new account in the bank, which was designated on the books of the bank by the title "Chicago, Rock Island and Pacific Railroad Company, Coupon Account," and on the books of the railroad company by the title: "First National Bank of New York, Interest Account." To this new account was transferred $433,275 from the general account. From the book entries and vouchers made by the railroad company it is apparent that the purpose of opening this new account and making deposits therein was to use the money so deposited for the payment from time to time, as it might accrue, of interest on the two bond issues above described. From September 1, 1905, until January 12, 1910, deposits to the credit of this account were made by the railroad company to meet the interest as it came due semi-annually upon the bonds of 1913 and 2002, and upon the presentation of coupons of said bonds the same were paid by the bank from funds deposited in said new account by means of cashier's checks drawn to the order of the person entitled to payment. On March 1, 1907, the railroad company opened a new account with the bank, designated on the books of the bank by the title: "Chicago, Rock Island and Pacific Railroad Company, No. 2 Account." To this account were credited the sums subsequently deposited to meet the interest payments as they became due. The amounts so deposited continued to be entered in the books of the railroad company in its account entitled "First National Bank of New York, Interest Account." To this "No. 2 account" was transferred $434,100 from the general account. No further deposits were made in the "interest" or "coupon" account opened on September 1, 1905, but the account was not closed, the sum credited therein on March 1, 1907, being held to meet the coupons which had matured prior to that date but had not yet been presented for payment.

After the opening of "No. 2 account" deposits continued to be made therein by the railroad company to meet the interest upon both bond issues accruing semi-annually, and payments were made by the bank from said account in the

same manner as similar payments had previously been made from the " interest " or " coupon " account.

On January 31, 1910, the bank, by authority of the railroad company, transferred to the Central Trust Company of New York the sum of $3,975 which represented the amount of the then unclaimed balance of the sums deposited to meet the interest on the bonds of 1913, and thereafter no deposits were made by the railroad company with the bank to meet the interest maturing on the bonds of 1913. Thereafter the accounts in the defendant bank known as the " coupon account " and " No. 2 account " consisted only of moneys deposited to meet the interest on the bonds of 2002, and deposits were made in said " No. 2 account " to meet the interest on the bonds of 2002 only.

On the date of the appointment of the plaintiff as receiver of the railroad company, January 18, 1915, the balance in the bank to the credit of the " coupon account " amounted to $765, and the balance to the credit of " No. 2 account " amounted to $6,070, or a total of $6,835. The bank rendered to plaintiff monthly statements of the state of the two accounts, and such statements showed, as was the fact, that after the appointment of plaintiff as receiver the bank continued to pay the interest coupons as presented. To this the plaintiff voiced no objection until December 9, 1915, on which date he formally demanded payment to him of the funds standing to the credit of the aforesaid " coupon " or " interest " account, and " No. 2 account." At the time of this demand the amount standing to the credit of the " coupon " or " interest " account was $445, and the amount standing to the credit of the " No. 2 account " was $3,290, making in all the sum of $3,735 with interest which is involved in this controversy.

The contention of the plaintiff is that the deposits although made for a particular purpose and under special accounts were none the less general deposits, as that term is known with reference to banking deposits, and that they established as between the bank and the railroad company the conventional relation of debtor and creditor, and he further contends that even if they are to be considered special accounts made with the bank for a special purpose to which the bank was authorized to apply them, still the transaction, at most, only created a

revocable agency which the railroad company might revoke at any time, and which was revoked in fact when plaintiff as receiver of the railroad company demanded payment to himself.

The defendant on the other hand insists that by opening the special accounts and depositing therein only moneys intended to be used for the payment of interest, and instructing or at least permitting the bank to pay the interest coupons as they were presented, the railroad company created a trust in favor of the holders of outstanding coupons, and that the moneys thus deposited became so impressed with such trust that the bank as trustee is entitled to retain them and apply them to the purpose for which they were deposited.

In our opinion the case is controlled by *Staten Island Cricket & B. B. Club* v. *Farmers' Loan & Trust Company* (41 App. Div. 321), which is not to be distinguished so far as the material facts are concerned. There, as here, a special account was opened to meet interest coupons as they came due; the interest was paid directly to the holders of the coupons by the depository out of the funds deposited in the special account, and there remained outstanding coupons matured, but still unpaid. Nevertheless, it was held that the deposit created merely the relation of debtor and creditor, and that the transaction did not constitute the depository a trustee, or impress upon the money in its hands a trust in favor of the coupon holders. To the same effect is *Van Horn* v. *Kittitas County* (28 Misc. Rep. 333; affd., in this court on opinion below, 46 App. Div. 623). The defendant relies upon certain cases in the Court of Appeals which in our opinion are not applicable. One is *Rogers Locomotive, etc., Works* v. *Kelley* (88 N. Y. 235) wherein it appeared that a railroad company which had assumed the payment of certain coupons made a deposit with a firm of bankers for the purpose of making such payment. The decision turned upon the form of receipt issued by the bankers and accepted by the railroad company which expressly recited that the money had been deposited *in trust* for the purpose of being applied by the bankers to the payment of the coupons. No such circumstance is present in the principal case. The other case is *Holland Trust Company* v. *Sutherland* (177 N. Y. 327). That case differed widely in its facts from the present. The discussion in the Court of Appeals

turned mainly upon the question whether or not the plaintiff, assuming it to have been a trustee, could maintain an action of interpleader. The facts upon which it was deemed to be a trustee are not fully stated. From the statement of the case in the Appellate Division, however (65 App. Div. 252), it appears that the Delaware Water Company, a foreign corporation, had made an issue of bonds, and to secure the payment of said bonds and the interest thereon had assigned all of its property to plaintiff as trustee, and had by the same instrument agreed to set apart, assign and transfer to plaintiff as trustee all revenues to be paid to the water company for fire hydrants by the city of Delaware, O., " to be used exclusively to pay the interest on said bonds and for no other purpose, so far as the same may be necessary for that purpose." The funds over which the controversy arose were all, except an insignificant amount, the proceeds of such fire hydrant rents, and were impressed with a trust in favor of the bondholders under the specific terms of the trust deed. We can find no analogy between that case and the present.

Our conclusion, therefore, is that the plaintiff is entitled to judgment as prayed for by the submission, but, according to the stipulation of submission, without costs.

LAUGHLIN, SMITH, PAGE and DAVIS, JJ., concurred.

Judgment directed for plaintiff, without costs. Order to be settled on notice.