**In re INTERBOROUGH CONSOL. CORPORATION. Petition of PORGES. Petition of DE ROTHSCHILD FRÈRES et al.**

(District Court, S. D. New York. December 7, 1921.)

**Bankruptcy ⬅140(3)—Special deposit by corporation, from which it paid interest coupons, held not a trust fund for benefit of bondholders.**

Where interest coupons attached to bonds of a corporation recited that they were payable at the office or agency of the corporation, the fact that for its own convenience the corporation, prior to each maturity date, made a special deposit in a bank, on which it drew checks in payment of coupons when presented, *held* not to constitute such deposit a trust fund for the benefit of coupon holders, but, on the bankruptcy of the corporation, the amount remaining in such deposit *held* a part of the general assets of the estate.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the Matter of the Interborough Consolidated Corporation, bankrupt. On petitions of one Porges and another for payment of claims from an alleged trust fund. Denied.

See, also, 267 Fed. 914.

Interborough Metropolitan will be referred to as Inter-Met.; Interborough Consolidated Corporation, as Consolidated; Empire Trust Company, as Empire Co. Porges asks for an order adjudging that the fund deposited with Empire Co. now entered on said Empire Co.'s books in the account entitled "James R. Sheffield, Trustee, Interborough Consolidated Corporation, Interest on Interborough Metropolitan Company 4½% Bonds," is applicable to the payment of the interest which became due on October 1, 1918, and on prior interest dates on the Inter-Met. 4½ per cent. collateral trust bonds, and for other relief incident to such an order.

By order dated April 8, 1921, De Rothschild Frères were allowed to intervene and to be joined as petitioners in the Porges application. They asked for the same relief. The petition of Porges, on behalf of himself and other holders of 4½ per cent. collateral trust bonds of Inter-Met., who have not received payment of interest upon such bonds which became due October 1, 1918, and previously, or on the coupons representing such interest, sets forth:

(1) The appointment of Sheffield as receiver on March 21, 1919, and as trustee on April 25, 1919.

(2) When Sheffield was appointed receiver, $431,910, was held on special deposit by Empire Co. and entered on the Empire Co.'s books in an account entitled "Interborough Consolidated Corporation, Interest on Interborough Metropolitan Company 4½% Bonds." This fund was composed of items deposited from time to time by Consolidated for the purpose of paying the interest accruing on said bonds. The receiver left the fund on deposit with the Empire Co., causing the account to be changed by prefixing his name to it as receiver.

(3) Upon his appointment as trustee, the title of the account was changed, by substituting the title of trustee for the title of receiver, and in that condition the fund is held on special deposit by the Empire Co.; the said Trust Co. having credited interest in the account on the amount deposited.

(4) Consolidated was created by consolidation, pursuant to section 7 of the Business Corporations Law of New York, of Inter-Met. and Finance & Holding Corporation (hereinafter called F. & H. Co.). This consolidation became effective on June 1, 1915. By section 11 of the Business Corporations Law, supra, it is provided as follows:

"*Rights of Creditors of Old Corporations.*—The rights of creditors of any corporation that shall be so consolidated shall not in any manner be impaired, nor any liability or obligation for the payment of any money due or to become due to any person or persons, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof be released or impaired by any such consolidation; but such new corporation shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damage. * * *"

About 1906 Inter-Met. authorized the execution and issuance of its collateral trust 4½ per cent. bonds to the principal amount of $70,000,000, payable April 1, 1956, and to bear interest from April 1, 1906, at 4½ per cent. per annum, payable on April 1 and October 1 of each year. On March 5, 1906, Inter-Met. executed and delivered to Windsor Trust Company, as trustee, a trust agreement to secure the payment of the principal and interest of these gold bonds (hereinafter referred to as collateral trust bonds). On June 1, 1915, the date when the consolidation of Inter-Met. and F. & H. Co. became effective, Inter-Met. had issued and there were outstanding approximately $67,000,000 of the collateral trust bonds, and there are now outstanding approximately $63,000,000. By article sixth of the trust agreement of March 5, 1906, it is provided, inter alia:

"The company will duly and punctually pay or cause to be paid to every holder of any purchase money bond (referred to herein as collateral trust bonds) the principal thereof and the interest accruing thereon in gold coin of the United States of America of or equal to the present standard of weight and fineness at the dates and place and in the manner mentioned in said bond or in the coupons thereto appertaining according to the true intent and meaning thereof. * * * The interest on the coupon bonds shall be payable only upon presentation and surrender of the respective coupons annexed to said bonds as such coupons respectively mature; and when and as paid all coupons shall forthwith be canceled by the company. The interest on the registered bonds without coupons shall be payable only to the registered holders thereof."

In consequence of the consolidation of the Inter-Met. and F. & H. Co., and of section 11 of the Business Corporations Law of New York (Consol. Laws, c. 4), the Consolidated corporation became obligated to pay the principal and interest of approximately $67,000,000 of the collateral trust bonds of Inter-Met., issued and outstanding on June 1, 1915, when the consolidation became effective. By article sixth of the trust agreement of March 15, 1906, it is provided, inter alia, as follows:

"The company will at all times until the payment of the principal of the purchase-money bonds (herein referred to as collateral trust bonds) keep an office or an agency in the borough of Manhattan, in the city of New York, where bonds and coupons may be presented for payment and where notices and demands in respect to said bonds and coupons or under this indenture may be served."

The first installment of interest on the collateral trust bonds became due on October 1, 1906, and pursuant to article sixth the executive committee of Inter-Met. on September 20, 1906, designated Windsor Trust Company, trustee under the trust agreement dated March 5, 1906, as the agent of the Inter-Met. for the payment of the interest on its collateral trust bonds issued under said agreement, and further designated the office of Windsor Trust Company, at 65 Cedar street, New York City, as the office at which the said interest would be payable.

On or about March 15, 1911, by resolution adopted by the executive committee of Inter-Met., it was determined that interest on the collateral trust bonds issued under the trust agreement, dated March 5, 1906, be paid direct to the holders thereof, instead of through the Windsor Trust Company, and the office of the Inter-Met. was designated as the office in the city of New York for the payment of the interest on the collateral trust bonds. By resolution of the executive committee adopted March 22, 1911, Windsor Trust Company was designated as the agency at which the coupons due April 1, 1911, for interest on the collateral trust bonds, should be paid.

The interest payments after April 1, 1911, were made upon presentation of the coupons at the offices of the Inter-Met. and subsequent to the consolidation effective June 1, 1915, at the offices of the Consolidated by check drawn upon the depositary of the funds "set apart" by the Inter-Met. or the Consolidated to the order of the holders of the coupons.

Pursuant to the resolution of the executive committee of March 15, 1911, the treasurer of the Inter-Met., on or about September 11, 1911, notified Windsor Trust Company that the coupons of the collateral trust bonds were to be paid at the office of the Inter-Met. on and after October 1, 1911, and the funds to cover the interest due on all the said bonds, both coupon and registered, would be deposited with Windsor Trust Company on September 30, and disbursed by the Inter-Met.'s checks drawn against said account with Windsor Trust Company. Thereafter, on or about September 30, 1911, the treasurer of Inter-Met. deposited with Windsor Trust Company a sum sufficient to cover the semiannual interest payment due October 1, 1911, on the collateral trust bonds then issued and outstanding, and directed that the same be held in an account entitled "Interborough Metropolitan Company Bond Interest Account," and further notified Windsor Trust Company that

the funds so deposited would be disbursed to the various bondholders by the Inter-Met.'s check drawn on Windsor Trust Company.

According to Porges, it became the custom of the treasurer, shortly before any installment of interest on the collateral trust bonds became due, "to separate and withdraw" from the general funds of the company sufficient funds to pay the installment of interest becoming due and deposit them with Windsor Trust Company; and the trust company entered the funds so deposited on its books by direction of the Inter-Met. in an account entitled "Interborough Metropolitan Company Bond Interest Account." In or about 1913 the Empire Co. succeeded the Windsor Trust Company, and thereupon the amount on deposit was transferred to the Empire Co., which entered it by direction of the depositor in an account designated "Interborough Metropolitan Company, Interest on Interborough Metropolitan Company 4½% Bonds," and maintained thereafter with the Empire Co. pursuant to the directions contained in a letter of the treasurer of the Inter-Met. to the Empire Company.

On or about February 4, 1914, the board of directors of Inter-Met. adopted a resolution appointing Burnet as deputy treasurer of the company, with power in conjunction with Sayre, coupon clerk, to disburse special funds "set apart" for the payment of dividends and note and bond interest. The president had stated that, in order to facilitate the disbursement of dividend and note and bond payments, it was desired to create special deposit accounts by withdrawal from the general fund from time to time of sums sufficient to meet the different dividend and interest requirements, each such withdrawal to be accomplished by check regularly drawn and signed in accordance with the by-laws, and to comprise a separate and distinct deposit to cover the exact amount of one full interest payment.

Pursuant to the aforesaid resolution the treasurer of Inter-Met. notified Empire Co. that the special checks of the company drawn on them against the account entitled "Interborough Metropolitan Company, Interest on Interborough Metropolitan 4½% Bonds," would be signed jointly by Burnet, deputy treasurer, and Sayre, coupon clerk, but that the resolution did not take away the signing power of himself and certain other officers under the by-laws or any former resolution and that checks might be drawn on the account above referred to, signed by him as treasurer, jointly with the aid of the deputy treasurer or the coupon clerk above named.

Thereafter, from time to time, shortly before any installment of interest on the Inter-Met. bonds became due, the treasurer withdrew from the general funds of the company sufficient money to pay the installment of interest becoming due and deposited it with the Empire Co., who entered it on its books in the account of the Inter-Met. entitled as aforesaid "Interborough Metropolitan Company, Interest on Interborough Metropolitan Company 4½% Bonds." Upon presentation of the coupons at the office of the Interborough Metropolitan Company checks were drawn upon the Empire Co., and were signed by Burnet and Sayre pursuant to the aforesaid resolutions of the board of directors of February 4, 1914, for the several amounts of coupons so presented, and were delivered to the persons presenting the coupons. The checks stated on their face that they were to be paid out of the said fund for the payment of interest entitled as aforesaid. Interest payments to registered holders of registered bonds were made by similar checks drawn to their order and sent to them by mail.

Upon the consolidation of Inter-Met. and F. & H. Co., effective June 1, 1915, by direction of the treasurer of Consolidated, the Empire Co. changed the title of the said interest account on its books so as to read "Interborough Consolidated Corporation, Interest on Interborough Metropolitan Company 4½% Bonds." The funds then held by the trust company, and those afterwards deposited, were applicable and were applied to the payment of such interest, and to no other purpose.

On or about June 3, 1915, at a meeting of the board of directors of Consolidated, the president stated that, in order to facilitate the disbursement of bond interest payments, it was desired to create special deposit accounts

by the withdrawal from the general fund from time to time of sums sufficient to meet the different interest requirements, each such withdrawal to be accomplished by check regularly drawn and signed in accordance with the by-laws and to comprise a separate and distinct account to cover the exact amount of one full interest payment, and that he had appointed Burnet deputy treasurer, with power, in conjunction with Sayre, coupon clerk, to sign checks against these special deposit accounts for the purpose of making the payments in question. The board of directors thereupon ratified, confirmed, and approved the appointment of Burnet as deputy treasurer of the company, with power, in conjunction with Sayre, to disburse special funds set apart for the payment of bond interest.

Pursuant to the aforesaid resolutions the treasurer of Consolidated on June 4, 1915, notified the Empire Co. that funds deposited with them in the "Interest Account" would be disbursed upon special checks of the Consolidated drawn on Empire Co. and signed jointly by Burnet, deputy treasurer, and Sayre, coupon clerk. Thereafter, as the interest due dates of the collateral trust bonds approached, the treasurer of the Consolidated, from time to time, withdrew from the general funds of Consolidated sums sufficient to meet the maturing interest payments on the collateral trust bonds, and deposited the same with the Empire Co., who entered the same on their books in the aforesaid "Interest Account." Only one fund was maintained for money deposited to meet the interest payments which came due after April, 1911, to wit, that first established in Windsor Trust Company, and hereinbefore described as "Interborough Metropolitan Company Bond Interest Account," later transferred to Empire Co. as "Interborough Metropolitan Company, Interest on Interborough Metropolitan Company 4½% Bonds," and after the consolidation carried by Empire Co. as "Interborough Consolidated Corporation, Interest on Interborough Metropolitan Company 4½% Bonds."

In this account all money "appropriated" for the payment of interest falling due on and after October 1, 1911, was entered. Such deposits were accepted upon the terms on which they were made, by the Windsor Trust Company and its successor, the Empire Co., who promised to pay the persons who should be entitled to receive it the interest on Inter-Met. collateral trust 4½% bonds out of funds so deposited. Such deposits were made semiannually to pay the April and October interest installments on the collateral trust bonds; the last of such deposits being made on September 30 and October 1, 1918, to pay interest becoming due October 1, 1918. Upon presentation of the coupons at the office of Consolidated, checks were drawn upon the Empire Co., and were signed by said Burnet and Sayre for the several amounts of coupons so presented, and were delivered to the persons presenting the coupons. The checks stated on their face that they were to be paid out of the fund for the payment of interest entitled as aforesaid. Checks for interest payments were likewise sent to the registered holders of registered bonds signed by the said Burnet and Sayre, drawn upon the Empire Co. and payable out of the same fund.

Said deposit to pay interest coming due on October 1, 1918, was made by means of two checks of Consolidated, which were sent to the Empire Co. with a voucher to which was attached a letter from the treasurer of Consolidated to its auditor. To such voucher the Empire Co. attached its receipts and returned such voucher and receipts to Consolidated. Such coupon holders as presented their interest coupons for payment up to the date of the receiver's appointment received payment of interest out of said funds. Interest payable on registered bonds October 1, 1918, was paid.

Porges was, at and before the filing of the petition, the owner and holder of 5 of said bonds, and is the owner of the coupons formerly attached thereto representing the interest upon said bonds which became payable on October 1, 1917, April 1, 1918, and October 1, 1918, amounting in all to $337.50. From May, 1917, until March 21, 1919, the date of the appointment of Receiver Sheffield, Porges was in the military service of the United States and absent from this country and was unable to present his coupons for payment between these dates. Thereafter on or about August 1, 1919, Porges presented

the coupons for payment at the office of the Consolidated and payment was refused. Attached to the petition of Porges are various exhibits, such as copies of resolutions, letters, etc., which for purposes of brevity will not be set forth. The petition of De Rothschild Frères and certain individuals sets forth that De Rothschild Frères and said individuals are the owners and holders of certain enumerated $1,000 Inter-Met. collateral trust 4¼ per cent. bonds and unpaid interest coupons thereof, maturing prior to March 28, 1918. Adopting, in substance, the petition of Porges, the De Rothschild petition sets forth certain facts peculiarly applicable to the holdings of the De Rothschild Frères.

All the petitioners were residents of Paris, France, and in 1911 they deposited all of the bonds for safe-keeping in a safe-deposit vault in a bank in Brussels, Belgium. The bonds were contained in this bank at the time of the invasion and occupation of Belgium by the hostile armies of the Imperial German government, which invasion and occupation commenced August 3, 1914. Access to the bonds was lost July 31, 1914, and subsequent to July 31, 1914, petitioners were unable to secure any of the coupons maturing during 1915 and 1916, owing to the continued occupation of Belgium by hostile troops.

While the formal occupation of Belgium territory by the German armies ceased in or about November, 1918, nevertheless, owing to necessary formalities, access to the bonds was not regained until about June, 1919. Meanwhile, as above set forth, Consolidated had been adjudged a bankrupt, and Sheffield had become trustee and was in possession.

The answer of the trustee does not controvert any of the essential facts set forth in the petitions, but takes issue with the conclusions of law asserted by the petitions.

Zabriskie, Sage, Kerr & Gray, of New York City (George Zabriskie and George Gray Zabriskie, both of New York City, of counsel), for petitioner Porges.

Stroock & Stroock, of New York City (M. J. Stroock, of New York City, of counsel), for petitioners De Rothschild Frères.

Alfred A. Cook, of New York City, for trustee.

William A. Barber and Joseph Diehl Fackenthal, both of New York City, for Empire Trust Co.

MAYER, Circuit Judge (after stating the facts as above). Briefly stated, the question presented on the facts which have been somewhat fully set forth is whether the case falls within Noyes v. First National Bank, 180 App. Div. 162, 167 N. Y. Supp. 288, affirmed on opinion below 224 N. Y. 542, 120 N. E. 870, or within Rogers Locomotive Works v. Kelley, 88 N. Y. 234.

At the outset, it is apparent that the cases dealing with the legal status of dividends duly and properly declared are not applicable. Such a dividend, when declared out of net earnings, is no longer the property of the corporation, but of the stockholders. Jermain v. Lake Shore & Mich. So. Ry. Co., 91 N. Y. 483; In re Interborough Consolidated Corporation (D. C.) 267 Fed. 914, and cases cited.

In the Noyes Case, supra, the railroad company opened an account with a bank with a voucher reading:

"For deposit in coupon account of C., R. I. & P. R. R. Company to meet 6 mos. interest due Sept. 1, 1905, on $17,331,000 of its 5 per cent. bonds of 1913, $433,275."

In the case at bar, the coupon, according to the terms of the mortgage, read:

"(Form of Interest Coupon.)

"No.                                                    $22.50
"On the first day of ———, 19—, Interborough-Metropolitan Company will pay to bearer at its office or agency in the city of New York, N. Y., twenty-two dollars and fifty cents, United States gold coin, being six months interest then due on its collateral trust 4½ per cent. gold bond No. ———.
                              "———————, Treasurer."

(Printed Mortgage, page 4.)

It will thus be noted that the theory of the mortgage (as is usual) was that the interest coupon holder was an ordinary creditor, in the sense that the mortgage, of course, did not, by its terms, set aside a specific fund, nor create machinery for that purpose, whereby the interest coupon holder could look to such a fund, as distinguished from his right to present his coupon when interest was due and receive his interest out of the general funds of the corporation. In other words, the ordinary relation of debtor and creditor was set up, and, if interest should not be paid when due, the remedy of the bond and coupon holders under the mortgage was to proceed as set forth in articles 5 and 7 of the mortgage.

It may be, and it will be assumed for the purposes of the argument, that the corporation could so act as to put a fund beyond its control out of which the interest should be paid (although, quære, whether the corporation had such power); but such disposition must be clearly evidenced by acts or transactions which show, in effect, the creation of a trust fund over which the corporation has relinquished control. Nowhere can there be found anything, either in correspondence or in vouchers, which indicates that at any time, if the corporation so desired, it could not have withdrawn the deposit from the Empire Co. and deposited the funds elsewhere, or retained them and paid the coupon holders, if it pleased, with currency over its own counter.

The procedure by which first the corporation deposited with Windsor Trust Company and later with Empire Co. was one of convenience. The fact that Windsor Trust Company and later (because of merger) Empire Co. was the trustee under the mortgage is immaterial.

Under some circumstances, a deposit made with the trustee under a mortgage, qua trustee, might give rise to some debatable questions; but here the deposit was made, so far as may reasonably be inferred, for purposes of ordinary and well-accepted banking convenience.

The many cases cited by the learned counsel for petitioners have been examined and considered, and failure to discuss them at length is due to the fact that, in last analysis, the situation is in principle precisely like the Noyes Case and in accordance with similar principles long since laid down by Mr. Justice Story in his Commentaries on Equity Jurisprudence. 2 Story's Jurisprudence, 1045, 1046.

The facts demonstrate that the Empire Co. did not undertake to do anything beyond honoring the Consolidated checks on the special account. It was under no obligation itself to pay coupon holders, nor to identify them or their right to payment. Its relations with Consoli-

dated were merely those of bank and depositor, with no instructions to pay coupon holders. If it had become insolvent, is there any doubt that the coupon holders could, nevertheless, have recovered from Consolidated?

There was no such situation or relation as that in the Rogers Locomotive Works Case, where the defendant railroad deposited in the hands of brokers $25,000 to meet certain interest coupons, receiving a receipt which stated that the money was received—

"in trust to apply the same to an equal amount of the coupons * * * in the order in which said coupons shall be presented * * * *the said money not to be subject to the control of said company otherwise than for the payment of said coupons.*" (Italics mine.)

In short, the case keeps running around in a circle, always returning to the Noyes Case, and reference to that case would have been sufficient, but for the amount involved and the desire of the court to find some sound reason, if such there were, to assist those whose tardy presentation was due to delay occasioned by war.

The applications of petitioners are denied, and the trustee is directed to deal with the amount in question as general funds of the estate. If the order to be entered upon this opinion is to be reviewed, the trustee will keep the fund intact, pending review.