STEEL CITIES CHEMICAL CO. v. VIRGINIA–CAROLINA CHEMICAL CO.

(Circuit Court of Appeals, Second Circuit. March 20, 1925.)

No. 179.

Corporations ☞479—Trust company held to hold fund deposited with it by corporation for payment of bond coupons as trustee and not as fiscal agent.

Under corporate mortgage to secure a bond issue, deposit by corporation with trust company of funds to pay coupons due on specified date "as per trust agreement" *held* to create trust company a trustee and not fiscal agent of corporation, and hence neither corporation nor its ancillary receivers had any right to reclaim such funds.

Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Steel Cities Chemical Company against the Virginia-Carolina Chemical Company. From an order directing the Central Union Trust Company of New York, as trustee, etc., to pay over to Charles G. Wilson and Arthur T. Vanderbilt, ancillary receivers, a certain fund, the Central Union Trust Company of New York, as trustee, etc., appeals. Order reversed, with directions.

This cause comes here from the United States District Court for the Southern District of New York, on appeal from an order entered in that court, dated July 11, 1924.

Charles G. Wilson and Arthur T. Vanderbilt, ancillary receivers of the Virginia-Carolina Chemical Company, defendant herein, filed a petition, verified on May 7, 1924, praying the District Court for an order directing the Central Union Trust Company of New York, in its own right and as trustee under an indenture dated June 1, 1922 (which indenture was entered into between the Virginia-Carolina Chemical Company, as party of the first part, and Central Union Trust Company of New York, as party of the second part), to show cause why the said trust company should not be compelled to pay over to the said receivers the balance on deposit with it of funds which had been deposited with it by the Virginia-Carolina Chemical Company for the purpose of providing funds for the payment of interest coupons attached to its first mortgage 25-year, 7 per cent. sinking fund gold bonds, secured by its aforesaid indenture, together with any accrued interest thereon.

Thereafter the cause came on to be heard, and, upon the pleadings and proceedings had thereon, the order of July 11, 1924, was entered, which ordered, adjudged, and decreed that the said Central Union Trust Company should pay to the ancillary receivers $25,102, together with any accrued interest thereon. And the appeal is from that order.

The Virginia-Carolina Chemical Company is hereinafter referred to as the chemical company, and the Central Union Trust Company is hereinafter referred to as the trust company.

Larkin, Rathbone & Perry, of New York City (Henry V. Poor, of New York City, of counsel), for appellant.

Taylor, Jackson, Brophy & Nash, of New York City (John G. Jackson, of New York City, of counsel), for appellees Charles G. Wilson and Arthur T. Vanderbilt, ancillary receivers.

Albridge C. Smith, of New York City, for complainant.

Lucien Oudin, of New York City, for defendant.

Before ROGERS, MANTON, and HAND, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). By the indenture of June 1, 1922, the chemical company executed and delivered to the trust company as trustee a mortgage to secure an authorized issue of $35,000,000 first mortgage bonds. To secure the payment of the bonds, it mortgaged and transferred to the trustee its real estate and various other kinds of property "then owned or after acquired," "including good will, rights, privileges, franchises, immunities, easements, equipment, shares of stock, and other property." It also pledged "all other property of every kind and description * * * hereinafter acquired * * * which by any provisions of this indenture is required to be mortgaged, * * * provided, however, that this indenture shall not be or become a lien on any current assets of the company." The term "current assets" is defined in the instrument

to mean, among other things, "cash in bank, on hand, and in transit."

In and by the terms of the bonds secured by said indenture, the chemical company promised to pay, "at its office or agency in the borough of Manhattan, * * *" to the bearer thereof, the principal sum therein mentioned, and to pay "at said office or agency" interest thereon at the rate and at the times therein set forth. The coupon interest notes attached to said bonds likewise provided for the payment of interest evidenced by same at the office or agency of the chemical company in the borough of Manhattan.

On November 28, 1922, the chemical company appointed the trust company its fiscal agent in handling income tax matters pertaining to the payment of coupons on the said bonds, and reporting to the government ownership certificates received in connection with such payment. The petition of the receivers alleged that the chemical company also appointed the said trust company as its paying agent in the payment of the interest on said bonds.

The usual procedure adopted by the chemical company in transmitting to the trust company, as its paying agent, moneys for the payment of said interest coupons was as follows:

A letter inclosing a check and a voucher receipt was sent to the trust company, signed by the treasurer of the chemical company, stating that he inclosed a check to the order of the trust company to put it in funds to pay for the account of the chemical company the coupons due on a certain date as per trust agreement.

The following letters indicate the method pursued by both parties in carrying into effect the above agreement:

"Richmond, Va., Nov. 24, 1923.
"Re Coupons Due December 1st, 1923—V.-C. C. Company 7% First Mortgage Gold Bonds Due 1947.

"Central Union Trust Company, Trust Department, New York City—Gentlemen: We inclose herewith our check for $857,500, to your order with which to pay the coupons due December 1st, 1923, covering six months interest on the 7% first mortgage gold bonds of this company, as per trust agreement dated June 1st, 1922. Will you please acknowledge receipt of this remittance, and account for the distribution of the funds in due course, and oblige

"Yours very truly,
"Virginia-Carolina Chemical Company,
"By E. E. Coles, Treasurer."

And thereupon the trust company would acknowledge receipt in the following form:

"Virginia-Carolina Chemical Company,
Richmond, Va.

"Cash Voucher in Favor of Central Union Trust Co. of New York, Trustee, New York, N. Y. No. ——. To check herewith, in payment of interest coupons due December 1, 1923, on our first mortgage 25-year 7% sinking fund gold bonds—series A outstanding, to wit: $24,500,000.00 for 6 months @ 7% per annum—$857,500.00.

"$857,500.00. Received of Virginia-Carolina Chemical Company eight hundred fifty-seven thousand five hundred and 00/100 dollars in full payment of above account, this —— day of Nov. 26, 1923.

"Central Union Trust Co. of New York,
"————, A. Treas.

"Correct: E. Anderson.
"Approved: J. B. Siegel, Asst. Auditor.
"Note.—Do not detach this receipt. Please date, sign, and return this voucher at once. If not correct, return unsigned, without alteration or erasure, and state difference."

The letters show deposits to pay coupons were made "as per trust agreement" which is hereinafter to be considered.

The question which this case presents depends upon the character in which a fund of $25,224, deposited with the trust company, is held. The court below has directed that the fund be turned over to the ancillary receivers of the chemical company, for the reason that in the court's opinion the fund is held by the trust company as the chemical company's agent and not as a trustee for the coupon holders.

The trust company relies upon the case of Rogers Locomotive Works v. Kelley, 88 N. Y. 234. In that case a railroad company had deposited with a firm of bankers $25,000 to meet interest coupons on mortgage bonds. In making the deposit, the company took from the bankers the following receipt:

"Received, New York, May 1, 1875, from J. M. C. Rodney, twenty-five thousand ($25,000) dollars in trust, to apply the same to an equal amount of the coupons of the first mortgage bonds and consolidated mortgage bonds of the Mississippi Central Railroad Company, in the order in which such coupons shall be presented to us for payment, after having been duly identified for payment at our office by stamp impressed thereon, the said money not to be subject to the control of said company, otherwise than for

the payment of said coupons as above described. [Signed] Kelly & Alexander."

After a portion of the money so deposited had been applied according to the trust, the sheriff levied on the remainder by virtue of an attachment against the depositor. A holder of certain of the unpaid coupons brought an action to determine its rights to the fund. The New York Court of Appeals held that the deposit was an absolute and irrevocable appropriation of the fund deposited to the payment of the coupons. It held that at the time the deposit was made the depositor parted with all control of the fund inconsistent with the trust, and that the brokers became vested with the title to the fund for the purposes of the trust.

The words of the receipt show that the understanding of the parties at the time of the deposit was that "the said money [was] not to be subject to the control of said company [the depositor] otherwise than for the payment of said coupons as above described." In its decision the court, commenting on the language quoted, said: "The intention of the corporation to devote the fund deposited with Kelly & Alexander exclusively to the payment of the coupons, and to place it in their hands as trustees for that purpose, is clearly indicated in the receipt, and the application of the fund for paying the coupons, was in precise accordance with the purpose for which it was raised." The court added: "The corporation [depositor] parted with all control of the fund, inconsistent with the trust declared in the receipt." And the court distinguished the case from that of Kelly v. Roberts, 40 N. Y. 432, saying that the latter "was the case of a mere revocable direction"; and from the case of Aetna National Bank v. Fourth National Bank, 46 N. Y. 82, 7 Am. Rep. 314, saying that "was also the case of a direction merely."

We are unable to distinguish in its essential facts the case now before the court from that of Rogers Locomotive & Machine Works' v. Kelley, supra. In that case the receipt showed that the deposited fund was to be used for the payment of coupons and "was not to be subject to the control" of the company making the deposit. In the instant case the same situation exists. The fund deposited was to be used for the payment of coupons, and was not to be subject to the control of the depositing company.

Article 12 of the indenture relates to the trustee. After providing for interest on funds deposited with the trustee, it continues as follows:

"* * * Provided, however, that any moneys at any time deposited by the company with the trustee for the redemption or other payment of bonds or for the payment of interest thereon shall be and are hereby assigned, transferred and set over unto the trustee in trust for the holders of the bonds or coupons intended to be paid therewith, and the company shall have no rights or interest in any such moneys, unless and until the holders of such bonds and/or coupons shall have failed to present them for payment within the period or periods stated in this indenture, except that the company shall be entitled to receive interest thereon at the same rate as above provided in respect of moneys treated as a general deposit. If the trustee has knowledge of the existence of any event of default or that any default has been made in the payment of interest on any of the bonds, any moneys held by it and subject to payment, repayment or reversion to the company need not be so paid or repaid, but may be held by the trustee as part of the trust estate, until such default or event of default has been remedied or waived pursuant to any of the provisions of article 7 hereof."

Under this indenture any moneys deposited at any time with the trust company, for the payment either of bonds or the coupons, did not create the relation of debtor and creditor or of agency. The trust company held all such moneys as a trustee, and the chemical company had no right to reclaim them at any time until and unless the contingency arose specified in the indenture by the failure of the holders of bonds or coupons to present them for payment within a period prescribed, and which period had not been reached.

The receivers, however, in support of their petition and the claim that the trust company held the deposit as the financial agent of the chemical company rely upon the decision of this court in the case of In re Interborough Consolidated Corporation, 288 F. 334, 32 A. L. R. 932. And the court below, in sustaining this claim of the receivers, did so upon the authority of that case.

In the Interborough Case the bonds and coupons contained nothing more than a promise to pay the amount due thereon at the office or agency of the company which issued them. During the entire period after the issuance of the bonds, the company, which was obligated for their payment, paid by its own check all coupons which became due and were presented. Before the coupons became due, and prior to each coupon

day, the debtor corporation deposited with the trust company a sum of money to pay the coupons which were presented. The only agreement which the trust company had with the debtor corporation was an agreement to pay out of the fund such checks as the depositor drew on it. As we pointed out in our opinion in that case, the trust company had never agreed to do anything more than to pay such checks as the borrowing company chose to draw. We said in the course of the opinion:

"Nothing that was said or done amounted to a declaration of trust, and the relation between the company which made the deposit and the Empire Trust, in which the deposit was made, continued throughout, as between themselves, to be that of debtor and creditor; and such was also the relation between the company which issued the bonds, and of the company which succeeded to its obligations, on the one hand, and the bondholders and coupon holders, on the other. We find it impossible to spell out a trust in favor of the coupon holders, although we admit that we entered upon the consideration of this case inclined to think a trust relationship existed. We have been led by a careful scrutiny of the facts to a contrary conclusion."

We distinguished the facts in that case from the facts in the Rogers Locomotive Case saying:

"It is clear that in that case the transaction was a trust, that the brokers held the fund as trustees, and that the company making the deposit had parted with the title, and with all control of the fund inconsistent with the trust declared in the receipt. The facts in that case were so different from the facts in this that it is clearly distinguishable. The brokers were not agents, but trustees, and the corporation parted with its control over the fund. In the instant case the Empire Trust was a mere agent, and the bankrupt, in making the deposit, never parted with its control of the fund."

And in the instant case we think its facts, and those in the Interborough Case, as plainly distinguishable as the latter was distinguishable from the facts in the Rogers Locomotive Case. In the instant case we have seen it was expressly provided in the indenture, in the provision which defined the rights, powers, and duties of the trustee, that any moneys deposited with the trustee for the payment of bonds or interest thereon "shall be and are hereby assigned, transferred, and set over unto the trustee in trust for the holders of the bonds or coupons intended to be paid therewith, and the compa-

ny shall have no rights or interest in any such moneys unless or until the holders of such bonds and/or coupons shall have failed to present them for payment within the period or periods stated in this indenture, except that the company shall be entitled to receive interest thereon at the same rate as above provided in respect of moneys treated as a general deposit." This provision was not restricted to moneys which were transferred at the time the indenture was executed, but by its express provision it applied to "any moneys at any time deposited by the company with the trustee for the redemption of bonds or for the payment of interest thereon." And certainly it cannot be denied that the money herein involved was deposited with the trustee for the payment of interest on the bonds. And, as it applied to any moneys at any time so deposited, it gave rise to a trust. And the indenture also expressly declared that in moneys so deposited the company making the deposit should have "no rights or interest in any such moneys," unless and until the holders of the bonds or coupons have failed to present them for payment within the periods stated in the indenture. And in this case no suggestion has been made that the period within which coupon holders had to present their coupons for payment had expired.

The assertion that the provisions above cited do not relate to all moneys deposited with the trustee for the payment of coupons is in our opinion absolutely untenable. It applies to "any moneys at any time deposited by the company with the trustee" for the payment of interest on the bonds. The chemical company had "no rights or interest" in any such moneys at the time the order appealed from was made and therefore the ancillary receivers have none.

The opinion expressed by the district judge that the deposit of moneys to pay the interest on the coupons was not intended to be governed by article 12 of the indenture, and the provision quoted therefrom, but was made with the trust company as the fiscal agent of the chemical company, has nothing whatever in the record to support it except an allegation contained in the petition of the receivers. That asserts that on November 28, 1922, the chemical company appointed the trust company "its fiscal agent" for certain purposes, and also appointed it "its paying agent" in the payment of the interest on the bonds. It does not appear on what the conclusion was based that the appointment was that of a fiscal agent. The legal status of the trust company is fixed by

the provisions of the indenture hereinbefore set forth, as well as by the letter also hereinbefore set forth, which letter is dated November 24, 1923, and in which the chemical company transmitted its check for $857,500 to pay coupons due on December 1, 1923, "as per trust agreement dated June 1, 1922." In view of that letter and the comprehensive provisions of the indenture, it is clear to us that the claim cannot be maintained that the trust company held the fund as a fiscal agent and not as trustee.

The order is reversed, with direction to the District Court to deny the petition of the ancillary receivers.

HAND, Circuit Judge (dissenting). It seems to me to make no difference whether the mortgagor makes a deposit on which he draws checks in favor of the bondholders when coupons are presented at his office, or whether he directs the bank to issue cashier's checks where the coupons are presented to itself. In the first case, each check is a separate order on the depositary to pay the payee, who has previously presented the coupon to the mortgagor; in the second, the letter remitting the funds is a single order to pay to any one who presents a coupon. I can see no distinction between the two, except that in the one case the whole thing is done at once, while in the other it is done piecemeal. Moreover, In re Interborough Consolidated Corporation, 288 F. 344, 32 A. L. R. 932, professed to follow and to depend upon Staten Island Cricket & Baseball Club v. Farmers' Loan & Trust Co., 41 App. Div. 321, 58 N. Y. S. 460, and Noyes, Receiver, v. First National Bank, 180 App. Div. 162, 167 N. Y. S. 288, affirmed 224 N. Y. 542, 120 N. E. 872, and in these the funds were remitted at once, with direction to pay, and the depositary paid at its own office on presentation by the coupon holders. It does not advance matters to say that in the second case the mortgagor has parted with control over the funds, for that is just the question that we are to decide. In the case at bar, the mortgagor may be said to have parted with control if one likes, but so he may, though he reserves the right to draw checks in favor of coupon holders. It is equally logical to say that that is his only reserved power. In either case it is merely a question of how you interpret a transaction which was not fully expressed.

Nothing in the correspondence at the time should affect the result. The funds are described as "covering six months' interest on the 7 per cent. first mortgage gold bonds of this company as per trust agreement dated June first, 1922." This merely served to identify them, and in no sense determined the capacity in which the depositary received them. Nor do I attach any significance to the form of the voucher, "cash voucher in favor of Central Union Trust Company of New York, Trustee." The parties do not mean such phrases to color their legal relations. Whatever may be said for the original ground of the doctrine and for any theoretical distinction between dividends and coupons, it seems to be unfortunate to introduce nice distinctions into such a subject, where certainty and simplicity is the first requirement.

The appellant relies upon the language of article 12 of the mortgage. While I agree that literally construed it might cover the deposit of funds with the trustee as depositary, it seems to me very clear that the parties had no such situation in mind. They were thinking about article 4, which provided for redemption. So far as concerned the provisions of the mortgage, the mortgagor was to pay the coupons when presented at its own office or at the office of some agent to be appointed. That agent might be the trustee or any one else, but the mortgagor had no thought of losing more control of the deposit, because he chanced to be the trustee, than if he were some one else.

While I am inclined to think that the result reached by my brothers is the right one, it seems to me at the expense of simplicity and certainty and in substance to be contrary to our decision in Re Interborough Cons. Corporation, supra.