## In re PRUDENCE CO., Inc.

### Application of PRUDENCE SECURITIES ADVISORY GROUP.

### Application of CALLAGHAN et al.
#### Nos. 27496, 27028.

District Court, E. D. New York.
April 20, 1938.

---

Thomas Cradock Hughes and Emanuel Celler, both of New York City, for Trustees of Prudence Co., Inc., debtor.

Percival E. Jackson and Clinton T. Roe, both of New York City, for Prudence Securities Advisory Group.

Delafield, Thorne & Marsh, of New York City, for Hurd Committee.

MOSCOWITZ, District Judge.

This is a motion to confirm the report of the Special Master which found that certain funds of The Prudence Company, Inc., the debtor, were trust funds or funds upon which there existed an equitable lien, and therefore were not to be included in the general assets of the debtor.

The facts, which are not controverted, reveal that for an extended period prior to the "Banking Holiday" of March, 1933, the debtor entered into arrangements with persons desirous of purchasing "Prudence-Bonds" whereby the prospective purchaser would make small payments either weekly or monthly and, when these deposits equaled the required amount, a "Prudence-Bond" would be issued. If, however, the subscriber at any time desired to cancel his subscription, he was privileged so to do by merely withdrawing the same. Since the "Banking Holiday", the regulations of the Banking Board of the State of New York have prohibited the debtor from any further sale of guaranteed bonds or certificates.

At a meeting of the board of directors of the debtor on January 2, 1932, a resolution was passed providing for the immediate segregation in the form of cash of sufficient moneys to cover all payments made to the debtor on account of these installment arrangements for the purchase of "Prudence-Bonds". Pursuant to the same resolution, there were also segregated from general corporate accounts various other funds most of which represented moneys received by the debtor on behalf of others, but which had not as yet been distributed.

A further resolution at the same meeting directed that any additional moneys which might be received of the type which had been segregated were similarly to be set apart in the special account. In accordance with these resolutions, the segregated moneys were placed in an account known as "The Prudence Company, Inc. Agency Account". In the latter part of 1933, this fund was broken down into several ac-

counts, one being the "Subscription Receipts Account Agency", the fund in question.

Whether this account is to be treated as a special fund for the benefit of the subscribers or is to be treated as part of the general assets of the debtor, depends upon the effect to be given to the unilateral segregation of the funds in a special account when viewed in the light of all the circumstances. The creation' of a trust requires no fixed form or phrase. The failure to notify the cestui que trust of the creation of the special interest in his favor, does not prevent the creation of a trust. Steel Cities Chemical Co. v. Virginia-Carolina Chemical Co., 2 Cir., 7 F.2d 280; Sinclair Cuba Oil Co., S. A., v. Manati Sugar Co., 2 F.Supp. 240, D.C.S.D.N.Y.; Rogers Locomotive & Machine Works v. Kelley, 88 N.Y. 234, 235; see Beaver Board Cos. v. Imbrie, 2 Cir., 296 F. 670, 672; 1 Bogert, Trust and Trustees (1935) § 172, p. 502. Nor is it objectionable that the settlor of a trust is himself the trustee. See Restatement of the Law of Trusts (1935) Sec. 100.

The Special Master has here found that what was originally a debtor-creditor relationship has been changed into a trust relationship by the segregation of the funds. It is to be recognized that if a debtor desires so to do, he may set apart a portion of his assets as the res of a trust for the purpose of assuring the creditor of collection of the debt, or as a substitute for the debt. See 1 Bogert, supra, § 19, at page 80. Whether this was done in the instant case remains to be determined.

It has been urged by the trustees of the debtor that an ordinary debtor-creditor relationship did not arise at the inception of a transaction between a subscriber and the debtor herein, but that the arrangement was really an installment sale of a "Prudence-Bond". While it may be true that an ordinary debtor-creditor relationship did not arise, it does not mean that the trustees' conclusion thereby follows. In fact, the peculiar. type of debtor-creditor relation herein leads to another conclusion. The trustees minimize the effect to be given to the privilege of the subscriber to withdraw his subscription at any time and receive a return of his money. Actually all the debtor did was to act as custodian of those funds of the subscriber, which the subscriber had. expressed only a present intention to have applied to the purchase of a "Prudence-Bond". When therefore, these funds were placed in a separate account, the debtor was doing more than engaging in a mere bookkeeping transaction. If what was intended thereby was the mere creation of a reserve against the contingent withdrawal of the subscriptions, it was hardly necessary to set up a one hundred percent reserve. A lesser percentage would have been satisfactory in view of the contingent nature. of the liability.

The more reasonable interpretation of the debtor's action in setting apart the special fund was the recognition on its part of the special nature of the funds it was holding, however it may previously have regarded them or immunized itself from special liability as to them. While not every segregation will result in the creation of a trust, we must recognize that in certain instances a trust will result. The present case bears an analogy in certain of its aspects to the cases in which a fund is set aside with a third party trustee for the payment of interest (Cf. Steel Cities Chemical Co. v. Virginia-Carolina Chemical Co., supra; Sinclair Cuba Oil Co., S. A., v. Manati Sugar Co., supra; Rogers Locomotive & Machine Works v. Kelley, supra) and in other of its aspects to Hamer v. Sidway, 124 N.Y. 538, 27 N.E. 256, 12 L.R. A. 463, 21 Am.St.Rep. 693. In that case an uncle admitted liability to his nephew on a certain obligation and wrote his nephew that the money was in the bank and would be held for the nephew by the uncle. The latter stated he would not interfere with it, but would hold it until the nephew was able to care for it. The court held that not one element was lacking for the creation of a trust.

Here the resolution of the debtor's board of directors prohibited the withdrawal of funds from the special account for purposes other than the repayment of those' who might withdraw their subscriptions. It was evidence of an intention not to interfere with the fund.

Viewing all the circumstances of the case, a trust was created by the debtor setting itself up as trustee for the subscribers. The report of the Special Master is therefore confirmed.

Settle order on notice.