DANIEL E. FINN, Sheriff of New York County, and Another, Plaintiffs, *v.* THATCHER MAGOUN BROWN and Others, Defendants.

Supreme Court, Special Term, Kings County, August 29, 1938.

*Jacob Chaitkin,* for the plaintiffs.

*Parker & Duryee,* for the defendants.

NOVA, J. The plaintiff Lee Deutsch, an attachment creditor, and the sheriff of New York county, jointly, have brought this action pursuant to sections 922 and 943 of the Civil Practice Act to reduce to the sheriff's possession a fund in the hands of the defendants Brown Brothers Harriman & Co., levied on under a warrant of attachment on April 28, 1937. Plaintiff Lee Deutsch has reduced to judgment her claim in the sum of $6,050, with interest, against the Good Hope Steel and Iron Works. There is no factual dispute between the parties, and the sole issue presented is whether the fund levied upon is the property of the judgment debtor.

In 1925 the judgment debtor floated an issue of bonds in the city of New York. The principal and interest of the bonds were

payable in dollars at the office of the predecessors of Brown Brothers Harriman & Co., in the city of New York, where the bonds were issued and delivered. The bonds were issued under a trust indenture with the New York Trust Company as trustee. The judgment debtor covenanted to make payment of interest and sinking fund in dollars in the city of New York. The trust indenture was complied with until the year 1933, when the judgment debtor, acting pursuant to a decree of the German government, deposited the amount of interest and sinking fund due during the last half of 1933 with the German Conversion Office for Foreign Debts in Berlin, Germany, in reichsmarks. The same procedure was repeated in 1934 with respect to the interest and sinking fund payment due in the first half of that year.

In 1933, the Conversion Office transferred to Brown Brothers Harriman & Co. the reichsmarks deposited by the judgment debtor for the payment of the interest due during the last half of that year, in the following manner: It converted fifty per cent thereof into dollars at the official rate of exchange and the other fifty per cent it remitted in the form of its own certificates of indebtedness (Conversion Office scrip) payable in "blocked" reichsmarks. These dollars and reichsmarks scrip were offered to the coupon holders in this country on condition that they be accepted in full and unconditional payment of the coupons due October 15, 1933.

The same procedure was followed in 1934 with respect to the coupons maturing on April 15, 1934, except that this time only thirty per cent was offered in dollars and seventy per cent in scrip.

A number of coupon holders failed to accept these offers. By reason thereof there remained in the possession of Brown Brothers Harriman & Co. on April 28, 1937, the date of the service of the warrant of attachment herein, the sum of $4,447.47 in cash and the sum of $18,810 "blocked" marks in scrip. It is to reduce this cash and property to the sheriff's possession that this action was brought.

The defendants contend that the fund in question was received from the Conversion Office in satisfaction of its own obligations. Both the German law and the statutes of the Conversion Office (its charter), to which the German law refers, have been submitted in defendants' answer. The construction to be placed thereon is a question of law for this court. (*Petrogradsky M. K. Bank* v. *Nat. City Bank*, 253 N. Y. 23, 34.) The German law of June 9, 1933, directed that all Germans owing moneys to foreign creditors deposit the amount thereof in reichsmarks in the German Conversion Office

for Foreign Debts (a separately incorporated " public law " corporation), and provided that such deposit shall have the effect of discharging them from such obligations. This law has been held to be completely void and of no effect in so far as the obligations of German corporations upon their dollar bond issues in this country are concerned, since it is an attempt to legislate extraterritorially with respect to contracts which by their terms are to be performed outside of Germany. (*Glynn* v. *United Steel Works Corp.*, 160 Misc. 405; *Marks* v. *United Steel Works Corp.*, Id. 678, and the authorities therein collated.)

Under the German law the moneys deposited by the debtor with the Conversion Office were to be paid over to the foreign creditors. The duty to pay over is certain and unambiguous, and the only thing left uncertain is the time of payment. There is no provision in such law divesting the debtor's title or transferring that title to the Conversion Office. Neither is there any provision that in the event the American creditors do not accept the moneys offered by the Conversion Office in full satisfaction of the judgment debtor's obligations the debtor would not be entitled to the return of the unexpended or unaccepted balance of the deposit. I do not think there is any force in the argument that the funds paid to the Conversion Office ceased to be that of the debtor by reason of the provision in the German law of June 9, 1933, to the effect that to the extent to which the debtor makes payment to the Conversion Office it is freed from its obligations.

All the evidence herein, documentary and otherwise, shows the Conversion Office to be a mere conduit or transmitting agency and that the judgment debtor, and not the Conversion Office, is the principal of Brown Brothers Harriman & Co.

The defendants urge further that the fund is being held in trust for the American coupon holders. They contend that the alleged trust was created by the cable sent to them on November 18, 1933, by the Conversion Office, which reads: " Supplementing our letter of October twentyfifth twentysixth with reference to account No. 5023, respectively, this will confirm that you are to receive cash and scrip forwarded to you for account of the respective loans thus referred to and to hold such cash and scrip in trust for *pro rata* payment of interest coupons appertaining to said respective loans although subject to your receipt of explicit administrative instructions from such respective loan obligors;" and the letter referred to therein which reads in part as follows: " Said amounts are to be applied by you for redemption of the coupons due October 15, 1933, on above loan in such a way that the owner of the coupon is to be paid 50% of the coupon value in cash and 50% in scrip. No

cash payment is to be made without surrender of the coupon. We refer in this connection to the instructions given you by the loan debtors."

The " instructions of the loan debtors " are contained in the letter of the judgment debtor dated October 27, 1933, which reads in part as follows: " We received advice from the Conversion Bank on the 14th inst. that said bank is now in a position to transfer 50% of the interest amount paid in by us and 50% of the scrip and they request us to point out to you that the coupon owner is to receive the cash amount only upon unconditional surrender of the coupon and delivery of the scrip at the same time. No cash payment is to be made without surrender of the coupon."

Similar instructions accompanied the payment for the coupons due in 1934. The instructions of the Conversion Office read in part: " Although you will receive explicit instructions from the loan-debtor, we beg to advise that the payment of the coupons is only to be effected against surrender of the coupon by the owner of same, against payment to him of 30% in cash and 70% in scrip. No cash payment is to be made without delivery of the scrip."

It would appear that this was an offer on the part of the judgment debtor to settle a debt by requiring a complete release, *i. e.*, the surrender of the coupons in consideration of the payment of something different from that which was provided by the contract. The mere use of the words " in trust for *pro rata* payment of interest coupons " is not, in and of itself, sufficient to create a trust. Nor is the fact that the defendants entered the funds in their books to the credit of " coupon trust account," coupled with the cable and letter instructions, sufficient to establish a trust. The general rule is that no trust arises in moneys deposited with the fiscal agency for the purpose of meeting interest on coupons of corporate obligors unless an express trust agreement is entered into for that purpose. (*Noyes* v. *First National Bank*, 180 App. Div. 162; affd., on opinion below, 224 N. Y. 542; *Erb* v. *Banco de Napoli*, 243 id. 45; 50 A. L. R. 1009; *Gledhill* v. *Schiff*, 224 N. Y. 593; *Staten Island Cricket & Baseball Club* v. *Farmers' L. & T. Co.*, 41 App. Div. 321.)

There can be no presumption of acceptance by the beneficiaries of the trust sought to be established herein in view of the conditions circumscribing the payments to be made to the coupon holders. No valid trust is created where the debtor purports to convey his property but couples the conveyance with a condition that the creditors must release in full. (*Hyslop* v. *Clarke*, 14 Johns. 458; *Seaving* v. *Brinkerhoff*, 5 Johns. Ch. 329; *Grover* v. *Wakeman*, 11 Wend. 187.) Further, it cannot be said that the judgment debtor intended to and did lose dominion and control over the fund.

The defendants argue that the facts herein give rise to a more effective method of creating a trust than by the giving of a receipt, as was done in the case of *Rogers Locomotive & Machine Works* v. *Kelley* (88 N. Y. 234). The receipt referred to is as follows: " Received, New York, May 1, 1875, from J. M. C. Rodney, twenty-five thousand ($25,000) dollars in trust, to apply the same to an equal amount of the coupons of the first mortgage bonds and consolidated mortgage bonds of the Mississippi Central Railroad Company, in the order in which such coupons shall be presented to us for payment, after having been duly identified for payment at our office by stamp impressed thereon, the said money not to be subject to the control of said company, otherwise than for the payment of said coupons as above described. (Signed) Kelly & Alexander."

Manifestly, the deposit made, as evidenced by the receipt, is not limited by any conditions, as in the instant case, and it is evident that it was the intention of the transferor in *Rogers Locomotive & Machine Works* v. *Kelley* (*supra*) to part with complete control of the fund by the use of the words, " the said money not to be subject to the control of said company." The court, in the latter case (at p. 238) pointed out: " The question turns upon the true construction of the transaction between Rodney and Kelly & Alexander. If that transaction was an absolute and irrevocable appropriation by the New Orleans, St. Louis and Chicago Railroad Company of the fund deposited, for the uses mentioned in the receipt, then plainly the corporation had no remaining interest therein subject to attachment. If, on the other hand, the fund, when deposited, remained the property of the corporation, and the direction to pay the coupons was a mere revocable mandate, creating an agency only and not a trust, the right of the sheriff to the fund cannot be denied. If the transaction was of the latter character, the attachment bound the interest of the corporation, and the subsequent payments by Kelly & Alexander were in their own wrong."

In the case at bar no such irrevocable expropriation was made. It is my opinion that no valid trust was created herein.

There remains for consideration the additional point raised by the defendants that even if the judgment debtor has some interest in the property it is not an attachable one. They contend that in the event the court finds the debtor has some such interest, it must be assumed that the fund was to be used as payment *pro tanto* of the obligations of the debtor under the indenture. This is without merit. There is no claim made here that the trustee under the indenture, the New York Trust Company, has made

any attempt to seize the fund or has claimed the fund for the benefit of the bondholders. The attempt made by the judgment debtor to settle its obligations for less than their face amount is not a compliance with the terms of the indenture under which these obligations were created. It follows that the provisions of the trust indenture covering the bond issue and the fiscal agency agreements entered into for the purpose of implementing these provisions have no application whatsoever. To hold that these moneys were received pursuant to the provisions of the trust indenture would require the making of a new contract between the trustee, the bondholders and the German obligors. In any event, the defendants Brown Brothers Harriman & Co., as fiscal agent, would have no right to apply the fund for any purpose other than as directed by their principal, the judgment debtor.

Plaintiffs' motion for summary judgment is granted and defendants' cross-motion denied.