## MANHATTAN COMPANY v. BLAKE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 163. Submitted March 23, 1893. — Decided April 3, 1893.

Under § 110 of the act of June 30, 1864, c. 173, 13 Stat. 277, afterwards embodied in § 3408 of the Revised Statutes, imposing a tax of $\frac{1}{24}$ of 1 per cent each month " upon the average amount of the deposits of money, subject to payment by check or draft, or represented by certificates of deposit or otherwise, whether payable on demand or at some future day, with any person, bank, association, company or corporation, engaged in the business of banking," moneys deposited by the treasurer of the State of New York, in the bank of the Manhattan Company, in the city of New York, intended to satisfy the interest or principal of stocks of that State, and credited to said treasurer, and then drawn for by him by drafts payable to the order of the cashier of the bank, and then paid out by the bank for such interest or principal, are subject to such tax.

The bank received a salary from the State for rendering such services, and did not charge any of the tax to the State.

Such tax was not a tax on the revenues of the State in the hands of a disbursing agent.

Nor was a trust created in favor of each creditor of the State as to the deposit in the hands of the bank.

THIS was an action at law, brought January 31, 1883, by the president and directors of the Manhattan Company, a New York corporation, possessing banking powers and carrying on the business of banking in the city of New York, against Marshall B. Blake, in the Supreme Court of the State of New York, and removed by the defendant, by *certiorari*, into the Circuit Court of the United States for the Southern District of New York, on the ground that the suit was brought against him on account of acts done by him under the revenue laws of the United States, and as collector of internal revenue for the second collection district of the State of New York.

The complaint in the suit, which was put in in the state court, contained six paragraphs, setting forth (1) the status of the plaintiff; (2) the status of the defendant, and an allegation that the banking house of the plaintiff was situated, and its business was carried on, in said second collection district; (3) that, on December 24, 1881, the plaintiff received from the defendant a notice stating that the tax assessed against it, from July 1, 1864, to May 31, 1881, amounting to $121,215.34, was due and payable on or before the last day of December, 1881, and that, unless it was paid by that time, it would become his duty to collect it, with a penalty of five per cent additional, and interest at one per cent per month, the tax being one upon deposits; (4) that the plaintiff, apprehending that if it did not pay the tax on or before December 31, 1881, the defendant would levy upon its property to satisfy the tax, paid to him on that day the sum of $113,085.62, being the amount of the tax without including any penalty, but that, before paying such amount, the plaintiff delivered to the defendant a written protest against the payment of the tax on deposits during the period from July 1, 1864, to November 30, 1879, because a portion of that tax was assessed upon moneys transmitted to the plaintiff by the treasurer of the

State of New York, for the payment of debts of the State, and which were not "deposits," within the meaning of the statute of the United States, and because the remainder of such tax was assessed upon moneys deposited with the plaintiff by the United States Trust Company of New York, on which the latter company had already paid to the United States a tax as upon deposits, but that the defendant, notwithstanding such protest, insisted upon the payment of the tax and required the plaintiff to pay it; (5) that said tax was in part unlawfully assessed against the plaintiff, and it was not legally liable to pay the same, for the reason that $31,021.25 of said tax was assessed against it on account of moneys transmitted to it by the treasurer of the State of New York, and received by the plaintiff as the agent of the State, to be applied by the plaintiff to the payment of the debts of the State, and the moneys were not "deposits," within the meaning of the revenue laws of thé United States, and for the further reason that $64,518.73 of said tax was assessed against the plaintiff on account of moneys received by it from the United States Trust Company of New York, upon which the latter company paid to the United States a tax as deposits; and (6) that, before the commencement of the suit, the plaintiff appealed to the Commissioner of Internal Revenue of the United States, and claimed that $95,539.98 of said tax was erroneously assessed and paid, for the reasons ·before mentioned, and that the plaintiff was entitled to have that sum refunded, and that said commissioner rejected said appeal and claim, for the reason, as stated by him; that the amount was legally assessed and collected. The complaint prayed judgment for $95,539.98, with interest from December 31, 1881.

The answer of the defendant, which was put in in the Circuit Court of the United States, admitted the allegations contained in paragraphs 1, 2, 3, 4 and 6 of the complaint, and put in issue the allegations of paragraph 5, and averred that the $113,085.62 had been paid to the defendant, as collector of internal revenue, as a tax on the deposits of money with the plaintiff, subject to payment by check or draft or represented by certificate of deposit or otherwise; that that sum

was justly due as such tax; and that he had long since covered the same into the Treasury of the United States.

The case was tried before Judge Lacombe and a jury, on the 22d of October, 1888. There was a bill of exceptions, which stated that the evidence of the respective parties was set forth in the following agreed statement of facts:

"First. The first, second, third, fourth and sixth articles of the complaint, the same being admitted by the answer.

"Second. That plaintiff has for more than forty years maintained a transfer office within its banking house in 40 Wall street, in New York, as provided by a contract made by the commissioners of the canal fund and the canal board with the Manhattan Company and pursuant to an act passed by the legislature of the State of New York authorizing such contract, passed May 13, 1840. (See Session Laws of 1840, p. 229.) Said agreement or contract is contained in document 5 of Assembly Reports of the State of New York for the year 1841, and said act and said contract as contained in said volumes may be referred to by either party herein and are admitted to be in evidence for the purpose of this action. It has also, during the period above mentioned and long prior thereto, acted as a depositary of moneys of the State of New York committed to its keeping by the treasurer of the State of New York under the authority vested in that officer by the statute of this State. Title 4, c. 8, part 1, of the Revised Statutes, (1 Edmonds, 177,) Exhibit B, *post*, and any and all acts in reference to the relations of the plaintiff to the State as a depositary of moneys of the State may be referred to by either party herein and are admitted to be evidence for all the purposes of this action.

"Third. That in pursuance of the provisions of the said contract contained in assembly document No. 5, and between the years 1864 and 1882, the plaintiff maintained such transfer office and paid out to various creditors of the State large sums of money received from the treasurer of the State of New York to be applied to the payment of the interest accruing from time to time on various stocks of the State of New York, and more particularly stock of the canal loan and volunteer

bounty loan, and also for the payment of the principal of the same as the same from time to time became due and payable, and gave receipts and vouchers for the same, as were required by the State, in accordance with the provisions of the act and agreement hereinbefore referred to; that such money so sent to the bank, so far as the same was to be applied to the extinguishment of the canal loan or volunteer bounty loan debts, was to be applied to the extinguishment of debts incurred by the State in the exercise of its sovereign and reserved powers.

"Fourth. That the tax assessed against the plaintiff, as stated in the third article of the complaint herein, was assessed upon deposits in plaintiff's bank, which included the amounts so received by the plaintiff from the treasurer of the State of New York to satisfy the interest or principal of said stocks; that the tax upon the amounts so received from the treasurer of the State of New York by the plaintiff was the sum of $31,021.25; that the course of business between the plaintiff and the treasurer of the State of New York in reference to the money so transmitted by him, for the purpose aforesaid, to the plaintiff was as follows: The interest upon said canal loan and volunteer bounty loan and the principal thereof falls due upon the first day of certain specified months. At some time during the week preceding the first day of the month when such principal or interest would fall due, the treasurer of the State would remit by mail to plaintiff drafts drawn by various country banks upon their respective correspondents in the city of New York to an amount equal to the payments to be made on the first of the ensuing month, the receipt of which drafts would be acknowledged by mail in a letter addressed by the plaintiff to the treasurer. Upon the receipt of these drafts, the amount thereof was at once credited to an account upon plaintiff's books entitled ' Treasurer of the State of New York, account of canal fund,' so far as the proceeds of said drafts were to be applied for payments on account of the canal indebtedness, and to an account entitled ' Treasurer of the State of New York.' so far as the proceeds of said drafts were to be applied to the bounty indebtedness. These drafts were collected by the plaintiff through the New York clearing house

and their proceeds mixed with the general deposits of the plaintiff. Plaintiff had on hand at the close of each day's business sufficient deposits to meet all claims of the State. Upon the receipt by the treasurer of the State of a notification from plaintiff that such drafts had been received by it the treasurer has drawn drafts upon the plaintiff to the order of the cashier of the plaintiff, enclosed and mailed in a letter addressed to the plaintiff, in which was indicated the purpose to which the funds were to be applied. The draft relating to canal loan, upon its receipt by plaintiff, was charged against the account entitled 'Treasurer of the State of New York, account of canal fund,' and credited to a new account called 'Interest New York State stocks, canal loan, July 2, 1881.' The draft relating to bounty loans was in like manner charged against the account entitled 'Treasurer of the State of New York,' and credited to a new account entitled 'Interest loan for payment of bounties to volunteers due January 1, 1877.'

"The mode in which the money was actually paid out by plaintiff was as follows: The book containing the names of the parties entitled to be paid with receipts for them to sign was placed in the hands of the transfer clerk of the plaintiff at its banking house, and to him the parties were directed in the first instance to apply. The transfer clerk, upon being satisfied of their identity and obtaining their signatures to the receipts, gave them each a paper in the following form signed by him:

" ' *Registered Stock.*
" ' N. Y. State stock.
" ' No. —.　　　　　NEW YORK, ——— —, 18—.
" ' Manhattan Company.
" ' Charge interest New York State stock, ——— —, 18—, ——— dollars.
" ' $—.
　　　　　　　　　　　　——— ———,
　　　　　　　　　" ' *Transfer Officer.*'

"The money was sent down in the same way; but when the principal became due the parties came with their certifi-

cates of stock and surrendered them and gave an assignment, and .then they. received ·from the transfer clerk a sort of a paper in this form :

"' State of New York, Transfer Office of the Manhattan Company.
"' Pay to the order of ⸺ ⸺ ⸺ dollars.
"' Reimbursement of loan to provide for deficiences in the sinking fund of July 1, 1881.
"' Registered stock.
"' Transfer office.                     ⸺ ⸺,

                                 "' *Transfer Clerk.'*

" The papers, of which the above is a copy, were presented to the plaintiff's paying teller by the person entitled to receive the interest or principal; and the money was paid him by such teller.    The amount paid upon each was charged either to the account 'Interest New York State stock, canal loan, July 2, 1881,' or to the account ' Interest loan for payment of bounties to volunteers due January 1, 1877,' according to the fact in each case, until said accounts were balanced.

"Fifth.  The claim of plaintiff in this action, so far as it relates to the sum of $64,518.73, being the sum assessed and collected on amounts upon which taxes have theretofore been paid by the United States Trust Company, is hereby waived and withdrawn."

The contract mentioned in paragraph 2 of the agreed statement of facts was made July 13, 1840, between " The People of the State of New York, by their agents, the commissioners of the canal fund of the said State, of the first part," and "the President· and ·Directors of the Manhattan Company, in the city of New York, of the second part."   The material parts of the contract were as follows :

" In consideration of the agreements and undertakings hereinafter contained on the part of the said party of the second part, the said party of the first part hereby agrees to establish an office in the bank of the said party of the second part in the city of New York for the issue and transfer of certificates

of any stock authorized by the laws of the State of New York for any loans made in its behalf by the comptroller or the commissioners of the canal fund, which office shall be continued and maintained in the said bank during the pleasure of the commissioners of the canal fund of the said State. . . .

"For rendering the services contemplated by this agreement the party of the first part will pay to the said party of the second part, so long as the said transfer office shall be continued in the said bank, a compensation at the rate of twelve hundred and fifty dollars annually, and to be paid quarterly, in lieu of all expenses and charges of every description, except the expense of ledgers and transfer books.

"In consideration of the aforesaid agreements the said party of the second part hereby agree and engage to maintain an office in their said bank for the issue and transfer of certificates of stock for any loan made in behalf of the people of the said State by the comptroller or by the commissioners of the canal fund, which certificates shall be issued and which transfers shall be made as hereinbefore declared; and for all transfers made and certificates issued contrary to the provisions of this agreement hereinbefore contained, the said party of the second part shall be immediately liable to the said party of the first part for the nominal amount of all certificates so transferred or issued. . . . .

"And the said party of the second part further agree that they will pay and redeem such certificates of stock issued under the direction of the commissioners of the canal fund in behalf of the State of New York, as shall from time to time be directed by the said commissioners, from the funds to be provided by them, at such rates as they shall prescribe; and will also pay and redeem such certificates of stock issued under the directions of the comptroller, as he shall direct, out of funds to be provided by him, at such rates as he shall prescribe, and in such payments will conform to such regulations as may be prescribed by the said commissioners or the comptroller in regard to such certificates respectively, and will render accounts of such payments and vouchers for the same as shall be prescribed in such regulations. . .

"And the said party of the second part further agree that they will from time to time pay the interest on all loans made by the commissioners of the canal fund in behalf of the State of New York, out of funds to be provided for that purpose, on such vouchers and proofs as the said commissioners shall prescribe, and will render accounts of such payments, with such vouchers, within such time, and in such form as they shall direct, and in like manner will pay the interest on loans made by the comptroller from funds to be provided by him, at such times and on such vouchers as he shall prescribe, and will render an account to him of such payments, with the vouchers therefor, within such time and in such form as he shall direct."

The provisions of the statute of New York, referred to in paragraph 2 of the agreed statement of facts as Exhibit B, Title 4, chapter 8, part 1, of the Revised Statutes of the State, were as follows:

"§ 7. The treasurer shall deposit all moneys that shall come to his hands on account of this State, except such as belong to the canal fund, within three days after receiving the same, in such bank or banks in the city of Albany, as in the opinion of the comptroller and treasurer, shall be secure, and pay the highest rate of interest to the State for such deposit.

"§ 8. All moneys directed by law to be deposited in the Manhattan bank, in the city of New York, to the credit of the treasurer, shall remain in said bank, subject to be drawn for as the same may be required.

"§ 9. The comptroller may transfer the deposits in the Manhattan bank from time to time to the bank or banks in the city of Albany, in which the moneys belonging to this State shall be deposited pursuant to the foregoing seventh section of this Title, so often as it will be for the interest of the State to transfer such deposits; but the comptroller may continue such deposits in the Manhattan bank, if the said bank shall pay a rate of interest to the State for such deposits, equal to that paid by the bank or banks in Albany, in which the state deposits shall be made.

"§ 10. The moneys so deposited shall be placed to the

account of the treasurer; and he shall keep a bank book, in which shall be entered his account of deposits in, and moneys drawn from, the banks in which such deposits shall be made.".

At the trial, the foregoing being all the evidence on both sides, the court directed a verdict for the defendant, to which direction the plaintiff excepted. The verdict having been rendered, a judgment was entered thereon against the plaintiff, and for costs. The plaintiff sued out a writ of error from this court.

*Mr. Augustus S. Hutchins* and *Mr. John W. Butterfield* for plaintiff in error.

I. The contract, under the provisions of which the money in question was sent by the state treasurer to the bank, and the manner in which the money was credited and disbursed by the bank, show plainly that the ordinary relation of banker and depositor never arose, and that Congress could never have contemplated the inclusion of such moneys for purposes of taxation under the general title of " deposits " as used in the act. On the contrary, it seems that the bank, as to the funds in dispute, was merely the salaried disbursing agent of the State and a trustee for the State's creditors. *Mechanics' Bank* v. *Merchants' Bank,* 6 Met. (Mass.) 13; *Libby* v. *Hopkins,* 104 U. S. 303; *Sharpless* v. *Welsh,* 4 Dall. 279; *Locomotive Works* v. *Kelley,* 88 N. Y. 234; *People* v. *City Bank,* 96 N. Y. 32; *National Bank* v. *Insurance Co.,* 104 U. S. 54; *Van Alen* v. *American Bank,* 52 N. Y. 1; *Pennell* v. *Deffell,* 4 De G., M. & G. 372; *Frith* v. *Cartlandt,* 2 Hem. & Mill. 417; *Martin* v. *Funk,* 75 N. Y. 134.

II. In construing a statute, it is always permissible to consider the motives which actuated the law makers and the object for which the act was passed.

It seems quite inconceivable that Congress intended to charge with taxation such deposits as those in question, which were sent to the bank, not to remain indefinitely and to be loaned out at usury by the bank, for its own profit, but to be immediately paid out to certain specified creditors of the

State. The authorities in this, as, indeed, in all courts, have held, from time immemorial, that the intent of the law makers must be looked for and followed in the construction of the statute, though it limit or even contradict the literal wording of the statute, and that if the language will admit of it, a construction must be given conformable to reason, justice and the public convenience and welfare. *Brewer* v. *Blougher*, 14 Pet. 178; *Minnesota* v. *Barber*, 136 U. S. 313; *Maillard* v. *Lawrence*, 16 How. 251; *Chase* v. *N. Y. Central Railroad*, 26 N. Y. 523; *Beebe* v. *Griffing*, 14 N. Y. (4 Kernan) 235; *Donaldson* v. *Wood*, 22 Wend. 395; *United States* v. *Fisher*, 2 Cranch, 358; *McKay* v. *Detroit Plank Road Co.*, 2 Michigan, 138; *King* v. *Hodnett*, 1 T. R. 9C; *Edwards* v. *Dick*, 4 B. & Ald. 212; *Murray* v. *Baker*, 3 Wheat. 541; *Pearse* v. *Morris*, 2 Ad. & El. 84; *Green* v. *Kemp*, 13 Mass. 515; *S. C.* 7 Am. Dec. 169; *Commonwealth* v. *Weiher*, 3 Met. 445; *Jackson* v. *Collins*, 3 Cowen, 89; *Margate Pier Co.* v. *Hannan*, 3 B. & Ald. 266; *Atkinson* v. *Fell*, 5 M. & S. 240.

III. The money so paid by plaintiff in error, and the recovery of which is now sought, was the proceeds of a tax collected by the agent of the government of the United States, and levied upon all the moneys then in the bank, including money of the State of New York then in the possession of an agent of the State of New York, and held for immediate disbursement to the State's creditors by such agent, who was receiving a salary to effect such disbursement, and such tax was, to that extent, in effect a tax upon the revenues of the State in the hands of its disbursing agent. Such moneys could not be constitutionally included in the term "deposits" as used in the act of 1863. *Collector* v. *Day*, 11 Wall. 113; *McCulloch* v. *Maryland*, 4 Wheat. 316; *People* v. *Commissioners of Taxes*, 90 N. Y. 63; *Bank* v. *New York*, 2 Black, 620; *United States* v. *Railroad Co.*, 17 Wall. 322; *National Bank* v. *United States*, 101 U. S. 1; *Weston* v. *Charleston*, 2 Pet. 249; *Dobbins* v. *Commissioners of Erie County*, 16 Pet. 435; *Veazie Bank* v. *Fenno*, 8 Wall. 533.

*Mr. Assistant Attorney General Maury* for defendant in error.

MR. JUSTICE BLATCHFORD, after stating the case, delivered the opinion of the court.

The statute of the United States under which the tax was assessed was § 110 of the act of June 30, 1864, c. 173, 13 Stat. 277, afterwards embodied in § 3408 of the Revised Statutes, which latter section reads as follows: "There shall be levied, collected and paid, as hereinafter provided: First. A tax of one twenty-fourth of one per centum each month upon the average amount of the deposits of money, subject to payment by check or draft, or represented by certificates of deposit or otherwise, whether payable on demand or at some future day, with any person, bank, association, company or corporation, engaged in the business of banking." Although this tax on deposits in banks was repealed by the act of Congress of March 3, 1883, c. 121, 22 Stat. 488, yet the latter act expressly excepted "such taxes as are now due and payable."

It was contended for the plaintiff (1) that the contract before set forth, made July 13, 1840, under the provisions of which the money in question was sent by the treasurer of the State to the plaintiff, and the manner in which that money was credited and disbursed by the plaintiff, show that the ordinary relation of banker and depositor never arose; that Congress did not contemplate the including of such money for purposes of taxation, under the general title of "deposits" as used in § 3408; and that the bank, as to the funds in question, was merely the salaried disbursing agent of the State and a trustee for the creditors of the State; (2) that the money paid by the plaintiff, which it now seeks to recover, was the proceeds of a tax collected by the agent of the United States and levied upon all the money in the hands of the plaintiff, including money of the State of New York, then in the possession of an agent of that State and held for immediate disbursement by that agent to the creditors of the State, such agent receiving a salary to effect such disbursement; that such tax was, to that extent, a tax upon the revenues of the State in the hands of its disbursing agent; and that such money could not

be included constitutionally in the term "deposits," as used in the statute of the United States.

The money in question was deposited with the plaintiff by the treasurer of the State of New York, to be afterward disbursed by the plaintiff, as agent of the State, for certain purposes designated in the statute of the State and in the contract of July 13, 1840. The money, when so deposited, became the property of the plaintiff, and was credited by it to the treasurer of the State in account, and was thereafter drawn for by drafts made by the treasurer of the State and sent to the plaintiff. If such money had been lost or stolen while in the hands of the plaintiff, the plaintiff, and not the State, would have borne the loss. The identical money received by the plaintiff from the treasurer of the State was not to be returned to the treasurer, or paid to his drawee, or kept distinct from the other funds of the plaintiff. It was not only a deposit of money, but was subject to payment by check or draft, and was payable either on demand or at some future day, all within the terms of the taxing statute of the United States. That statute covered general deposits, and not special deposits.

There is no foundation for the contention on the part of the plaintiff that a trust was created in its hands in favor of each creditor of the State intended to be paid through the plaintiff, as a consequence resulting from each deposit of money made by the treasurer of the State with the plaintiff. The money so deposited was not placed, by the mere fact of the deposit, irrevocably beyond the control of the State. Neither the money credited to the account called "Interest New York State stocks, canal loan," nor that credited to the account entitled "Interest loan for payment of bounties to volunteers," became, by such respective credits, the property of the holders of the securities for the respective loans, so as to create a title in them to the money as interest money. If the money had been withdrawn by the State from the plaintiff, the latter could not have been liable therefor to the creditors holding such securities.

By the contract of July 13, 1840, the plaintiff agreed to act as agent of the State in paying out from the deposits made

with it by the State sums of money in favor of the holders of
the obligations of the State, to pay such holders the interest
on such obligations.   The plaintiff occupied two relations to
the State, one that of debtor as a bank for the money depos-
ited with it by the State, and the other that of agent of the
State to pay out from the money deposited, if it remained on
deposit, money for certain specified purposes.   The tax was
assessed on deposits of money "subject to payment by check
or draft, or represented by certificates of deposit or otherwise,
whether payable on demand or at some future day"; and the
clear purpose of the statute was to tax deposits of money in
the situation of those in question.   There is nothing in the
contract of July 13, 1840, to relieve the plaintiff from its lia-
bility as a bank for the money deposited with it by the State.
The plaintiff did not hold the money as an agent of the State,
but was such agent only to disburse the money.   The theory
that the plaintiff was a trustee of the money deposited, for
certain *cestuis que trust*, on the ground that the right to the
money had become vested, by the mere fact of the deposit, in
the creditors of the State, would make it necessary that it
should be impossible for the State to withdraw the deposit,
which was not the fact.

We see nothing to affect these views in the cases cited by
the plaintiff, of *Mechanics' Bank* v. *Merchants' Bank*, 6 Met.
(Mass.) 13; *Sharpless* v. *Welsh*, 4 Dall. 279; *Van Alen* v.
*American Bank*, 52 N. Y. 1; *Martin* v. *Funk*, 75 N. Y. 134;
*Locomotive Works* v. *Kelley*, 88 N. Y. 234; *People* v. *City
Bank*, 96 N. Y. 32; *National Bank* v. *Insurance Co.*, 104
U. S. 54; *Libby* v. *Hopkins*, 104 U. S. 303; *Pennell* v. *Deffell*,
4 De G., M. & G. 372; *Frith* v. *Cartland*, 2 Hem. & Mill.
417.

It is distinctly provided by § 8 of Title 4, chapter 8, part 1,
of the Revised Statutes of New York, that "all moneys
directed by law to be deposited in the Manhattan bank, in the
city of New York, to the credit of the treasurer, shall remain
in said bank, subject to be drawn for as the same may be
required."   This shows clearly that the money put into the
plaintiff's bank by the State is "deposited" there, and is to lie

there, to the credit of the treasurer of the State, and may be drawn at any time when required by the State. Section 9 also shows that the money so deposited is considered by the State as "deposits." It thus becomes "deposits of money, subject to payment by check or draft," within the meaning of the statute of the United States imposing the tax.

Nor do we perceive any soundness in the view that the money on which the tax in question was assessed was a part of the revenue of the State in the hands of its agent for immediate disbursement, and so not liable for the tax. We cannot regard the money in question as the money of the State in the hands of its agent. After it was deposited with the plaintiff it was the money of the plaintiff, and no tax was put upon the plaintiff as respected its function as agent of the State. It might as well be said that a tax upon the business of the plaintiff would have been invalid because such business embraced transactions with the State. Even regarding the tax as a tax upon the plaintiff as a bank, it was not a tax upon it as agent of the State, but as a bank receiving deposits. The account of the State was not charged by the plaintiff with the amount of the tax, nor was that amount deducted from the deposits made by the treasurer of the State with the plaintiff. So the tax did not fall upon the State in any way.

The contention is, however, that if the tax was not on the function of the plaintiff as agent of the State, it was on the revenue of the State. It might as well be contended that a federal tax assessed on, and collected from, the money of a citizen of New York, who was in arrears to the State in respect of his taxes, was laid on the revenues of the State, and, therefore, illegal. The cases cited by the plaintiff in this connection, of *McCulloch* v. *Maryland*, 4 Wheat. 316; *Weston* v. *City of Charleston*, 2 Pet. 449; *Dobbins* v. *Commissioners of Erie County*, 16 Pet. 435; *Veazie Bank* v. *Fenno*, 8 Wall. 533; *Collector* v. *Day*, 11 Wall. 113; *United States* v. *Railroad Company*, 17 Wall. 322; *Bank of Commerce* v. *New York City*, 2 Black, 620; *National Bank* v. *United States*, 101 U. S. 1; and *People* v. *Commissioners of Taxes*, 90 N. Y. 63, have no application to the case in hand. The plaintiff in

the present case was not required to withhold, and did not withhold from the State anything that would otherwise be due to the State.

*Judgment affirmed.*