**920**

## CITY COUNCIL OF CHARLESTON, S. C., v. ELLIOTT et al.

## KRUPNICK v. PEOPLE'S STATE BANK OF SOUTH CAROLINA et al.

### No. 3783.

Circuit Court of Appeals, Fourth Circuit.

Nov. 19, 1934.

J. Waties Waring, of Charleston, S. C., for appellant.

E. W. Mullins and Christie Benet, both of Columbia, S. C. (Benet, Shand & Mc-Gowan and Nelson & Mullins, all of Columbia, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the city council of Charleston, S. C., from a decree, entered in the receivership proceedings of the failed People's State Bank of South Carolina, denying priority to a claim for deposits made with the bank to meet tax anticipation notes executed by the city. The claim of the city was that the deposits were trust funds in the hands of the bank; that they augment-ed the assets which passed into the hands of the receivers; that these assets should be held impressed with a trust to the amount of the deposits; and that the claim of the city should be paid in full therefrom. The judge below in a learned and exhaustive opinion held that the deposits were received by the bank as deposits for a special purpose, not as trust funds to be held and administered in a fiduciary capacity, that the city occupied the status of an ordinary general depositor, and that no circumstances giving rise to a trust had been proven. We think that this holding was correct.

The city had been borrowing from the bank in anticipation of the collection of taxes, executing to the bank tax anticipation notes, which were either held or sold by it. The deposits in question were made under an agreement that tax collections would be deposited in special accounts, separate from the general deposit account of the city, and that the tax anticipation notes of each tax year would be paid from the account in which the taxes for that year had been deposited. The funds so deposited were mingled by the bank with its general assets; and there is nothing to show that it was contemplated by any one that they should be segregated from the general funds of the bank or that the bank should handle them as trust funds held by it as a fiduciary. On the contrary, it appears that the bank paid interest on the deposit balances in the tax accounts. It is true that in December, 1931, there was talk of withdrawing a part of the funds from the bank in order that a division of deposits might be made, among the other banks of the city and that at that time the bank opposed the withdrawals on the ground that the deposits were trust funds, as well as on the ground that their withdrawal would ruin the bank; but not even then was there any suggestion that the funds deposited by the city were being segregated from the other funds of the bank or were being handled otherwise than as funds received under general deposits. Request was made at that time that the bank set aside collateral as security for the deposits, and it agreed to do so, but this agreement was never carried out.

The principal argument made in behalf of the city is that the conversations in December show that the deposits in question were trust funds and that they should be so treated by the court, irrespective of such incidental matters as the handling of the funds and the payment of interest thereon. We think, however, that greater weight should be given to the manner in which the deposits

were made, to the way in which they were handled by the bank without objection from the city, and to the fact that interest was paid upon them, than to mere language used in describing them, if this language were inconsistent with the nature of the transactions as shown by what the parties did, for it is axiomatic that equity regards substance and not form. But there is no real inconsistency here. It would seem, although we do not pass upon the point, that the credits in the bank arising from the deposits did constitute trust funds for the payment of the tax anticipation notes and that they could not have been withdrawn without the consent of the holder of the notes. But this is far from saying that the cash and cash items delivered to the bank in making the deposits were received by it in a fiduciary capacity with duty on its part to segregate them from its general assets and invest them for the benefit of the cestui que trust under the rule as laid down in Strauss v. U. S. F. & G. Co. (C. C. A. 4th) 63 F.(2d) 174. They were mere general deposits made for a special purpose and creating a credit balance with the bank applicable to that purpose. The city in its arguments ignores the distinction between a trust with respect to such a credit balance and a trust in funds held by the bank in a fiduciary capacity, a distinction we were at pains to point out in Santee Timber Corporation v. Elliott (C. C. A. 4th) 70 F.(2d) 179, 182. It is well settled, at least in the federal courts, that a deposit for a special purpose does not give the status of trust funds to the funds received by the bank as a result of the deposit. As we said in Santee Timber Corporation v. Elliott, supra:

"There is some conflict among the state decisions as to whether a deposit made in a bank for a special purpose creates a trust fund in the hands of the bank. But it is well settled in the federal courts that, if the deposit is made as a general deposit, the fact that it is made for the purpose of providing a credit which is to be used thereafter for a special purpose does not give it the status of a trust fund in the hands of the bank. Thus, in Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288, it was held that a deposit made for the purpose of providing a credit against which bonds to be purchased by the bank for the depositor were to be charged, did not give rise to a trust in favor of the depositor. In Manhattan Co. v. Blake, 148 U. S. 412, 425, 13 S. Ct. 640, 644, 37 L. Ed. 504, a deposit by a state with a bank which acted as agent in paying interest on its obligations was held not to establish a trust but a deposit account subject to the tax on bank deposits. In Kershaw v. Kimble (C. C. A. 10th) 65 F.(2d) 553, a deposit in a savings account to be charged with purchases of securities to be made by the bank was held not to create a trust. And the same conclusion was reached in Keyes v. Paducah & I. R. Co. (C. C. A. 6th) 61 F.(2d) 611, 86 A. L. R. 203, where there was a deposit of funds in a bank pending the final determination of a lawsuit; in Great Atlantic & Pacific Tea Co. v. Citizens' Nat. Bank (C. C. A. 3d) 66 F.(2d) 883, where deposits were made with a bank which was to make daily transmission to another bank of accumulated deposits; in Pitts v. Pease (C. C. A. 5th) 39 F.(2d) 14, where deposits were made for the purpose of paying certain notes; in Northern Sugar Corporation v. Thompson (C. C. A. 8th) 13 F.(2d) 829, where deposits were made to meet a pay roll; in Davis Trust Co. v. Smith, supra (C. C. A. 4th) 226 F. 410, where funds were deposited in a bank under an agreement that interest on the deposit was to be paid to certain children during their minority and that the principal sum was to be paid to them on their coming of age; and in the recent case of Swan v. Children's Home Society of West Virginia, supra (C. C. A.) 67 F.(2d) 84, where a deposit was made in a bank at interest, pursuant to the terms of a will and an order of a probate court, with direction that the interest on the deposit be paid to a society for the care of orphan children. The holding of the South Carolina courts is to the same effect. See Fant v. Home Bank & Trust Co., 152 S. C. 140, 149 S. E. 599."

The case of President & Directors of Manhattan Co. v. Blake, 148 U. S. 412, 13 S. Ct. 640, 644, 37 L. Ed. 504, seems directly in point. In that case deposits were made by a state with a bank which acted as its agent in paying interest for it. The question was whether such deposits were subject to a tax imposed on bank deposits or whether they were to be regarded as trust funds held by the bank. In holding that they were taxable as deposits, the court said:

"The money in question was deposited with the plaintiff by the treasurer of the state of New York, to be afterwards disbursed by the plaintiff, as agent of the state, for certain purposes designated in the statute of the state and in the contract of July 13, 1840. The money, when so deposited, became the property of the plaintiff, and was credited by it to the treasurer of the state

in account, and was thereafter drawn for by drafts made by the treasurer of the state, and sent to the plaintiff. If such money had been lost or stolen while in the hands of the plaintiff, the plaintiff, and not the state, would have borne the loss. The identical money received by the plaintiff from the treasurer of the state was not to be returned to the treasurer, or paid to his drawee, or kept distinct from the other funds of the plaintiff. * * * By the contract of July 13, 1840, the plaintiff agreed to act as agent of the state in paying out from the deposits made with it by the state sums of money in favor of the holders of the obligations of the state, to pay such holders the interest on such obligations. The plaintiff occupied two relations to the state,—one that of debtor as a bank for the money deposited with it by the state, and the other that of agent of the state to pay out from the money deposited, if it remained on deposit, money for certain specified purposes."

The failure of the bank to set aside collateral as security for the deposits in accordance with the agreement of December does not help the position of the city with respect to the trust which it seeks to establish. Even if there were a breach of duty on the part of the bank to set aside securities, this did not result in an identifiable res which could be declared the subject of a trust. Edisto National Bank v. Bryant (C. C. A. 4th) 72 F.(2d) 917; Swan v. Children's Home Society of West Virginia (C. C. A. 4th) 67 F.(2d) 84; Wisdom v. Keen (C. C. A. 5th) 69 F.(2d) 349, 350.

There was no error, and the decree appealed from will be affirmed.

Affirmed.