## WOOLLEY v. CITY OF NATCHEZ.
### No. 8264.

Circuit Court of Appeals, Fifth Circuit.
May 1, 1937.

HUTCHESON, Circuit Judge, dissenting.

W. A. Geisenberger, of Natchez, Miss., for appellant.

William C. Martin and S. B. Laub, both of Natchez, Miss., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Appellee, City of Natchez, obtained a decree that appellant Woolley, as receiver of the Britton & Koontz National Bank of Natchez pay over $5,125 in his hands belonging to the city. The District Court found as a fact "that the money furnished by the City of Natchez on the 15th of February, 1933, was furnished Britton & Koontz National Bank for the specific purpose of paying coupons and bonds that were falling due on that date under the terms and conditions of their issuance, and which would be presented to Britton & Koontz National Bank for payment, it being the place desig-

nated therefor, and that for said purpose the money so provided by the City was not to constitute any part of the assets of the defendant bank nor intended to go into the general funds of said bank, but was to be held and used by said bank solely for the purpose of paying said bonds and coupons due that day, towit, Feb. 15th, 1933, and that the officers of the Britton & Koontz National Bank and the City of Natchez so understood said purpose." The receiver here contends that there was a general deposit of the money, raising the relationship of debtor and creditor, and that the rule of pro rata distribution of a failed National Bank's assets applies to the City of Natchez. The city admits that result if there was a general deposit, but contends that the court found the facts rightly, that the bank never obtained any title to the funds furnished it, and that those not disbursed still belonged to the city and should have been returned by the bank and must be by its receiver. The issue is thus one of fact as to the real nature of the deposit on February 15, 1933.

The city in 1927 issued $160,000 of bonds, the interest coupons falling due February 15th, and August 15th, and the bonds serially maturing on February 15th. Britton & Koontz National Bank and another were bidders for the bonds, both stipulating that they should be payable at that bank, and the bonds and coupons were made so payable on their face. Each six months since the city has furnished the bank on or about the date of maturity the exact amount necessary to pay maturing bonds and coupons, which were paid by the bank as they were presented over a period often of several months. The bank never made any report to or accounting with the city, but preserved the bonds and coupons and returned them canceled. The city never checked against the funds so deposited. It did no other business with the bank. Its legal depository was another bank which gave security and paid interest on deposits according to the Mississippi statutes. The city clerk was given a deposit slip in the ordinary form for funds left with the Britton & Koontz National Bank, usually sent to him by mail after the warrant drawn on the depository had been collected, and which the clerk testified he threw into the wastebasket. There was no passbook. The account was entered by the bank on its books as "City of Natchez Bond and Coupon Account" and the deposit slips were thus made out. The warrants were each marked "$160,000 Pav-

ing and Sewer Sinking Fund." The clerk in delivering the warrant usually and on the occasion in question said: "Here is the money to pay our bonds and coupons due today." The cashier who received many of the deposits and that here in question testified there were no special instructions about the deposits but "they were to be kept there to pay certain coupons or bonds as they were presented to our bank for payment." He regarded them, however, as funds of the bank like those put to an individual checking account. So said the other bank officers. It is not denied that when the bank closed March 2, 1933, $5,125 of the last deposit was unexpended and that the receiver had it among the cash assets of the bank.

If one individual should deposit with another individual money to pay the former's note due a third person about to be presented at the depositee's office, no one would doubt that the money was a trust and not a loan, and to be returned if the note should not within a reasonable time be presented. It is otherwise when funds are left at a bank whose general business it is to receive money on general deposit, thereby borrowing it on the faith of the bank's engagement to repay by honoring checks or by paying notes or drafts as directed. Funds put into bank as these were by an individual would be presumptively a general deposit, the individual having the burden of showing a contrary agreement. We think a different presumption applies when a public official under the law of Mississippi places public funds in a bank which is not the legal depository, but is the place of payment named in public obligations, in order to pay them. The Mississippi statutes authorize banks to become general depositories for public funds on giving the required security; and they pay interest thereon, of course acquiring title to and the right to use the funds deposited. Gulley v. Wisdom (C.C.A.) 69 F.(2d) 495. But a general deposit of public funds in a bank not qualified as a depository is not forbidden by law and can be made. Webster v. United States Fidelity & Guaranty Co. (C.C.A.) 71 F.(2d) 475. We are now dealing with a transaction within sections 5990 and 5992 of the Mississippi Code of 1930. The former section provides that when public bonds are issued "of which principal and interest shall be payable at some bank or trust company, or at some office other than the county treasury," a warrant shall be

issued against the proper fund for the amount of principal and interest due, and "exchange shall be forwarded to the paying agent * * * sufficient in amount to pay said principal and interest and a reasonable fee to said paying agent for handling same. * * * Said exchange shall be forwarded in time to reach the paying agent at least five days prior to the date on which said principal and interest shall become due, and the receipt of the paying agent * * * shall be sufficient voucher in the hands of said clerk for said remittance until the bonds or coupons shall have been paid and cancelled and returned to said clerk." Section 5992 applies these provisions expressly to city bonds. The present transaction having occurred in Mississippi where this statute is of force, the clerk and the bank must be considered as having acted with reference to it. The statute, we think, does not intend to direct the clerk to lend the city's money on general deposit to any bank or to the proprietor of any other office where the bonds are payable without security and without reference to financial responsibility. Its purpose is rather to have funds furnished to the bank or office as the city's agent to disburse them and to return such as are not disbursed, receiving for the service a reasonable fee. A bank can earn additional sums by charging for remitting to those who send to it the bonds and coupons for collection, the entire service being well within usual banking functions. While no fee was here demanded or paid, this whole transaction was according to and covered by the statute. The bank understood that the deposit was no general deposit subject to check, but was one to pay coupons and bonds due to be presented that very day. The clerk did not intend to lend the money to the bank. The bank had no right to do anything with the proceeds of the warrant, on its face drawn on the sinking fund to pay bonds and coupons and expressly so stated by the clerk in delivering it, except to pay them and return any balance not required therefor. If for its convenience it commingled the funds with its own, that does not prevent the restitution here demanded when the city's money is traced as it has been. See Jennings v. United States F. & G. Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248; Wisdom v. Keen (C.C.A.) 69 F.(2d) 349; Washington Loan & Banking Co. v. Fourth Nat. Bank (C.C.A.) 38 F.(2d) 772. The creditors of the bank are not wronged. The city is entitled to its money back.

The judgment is affirmed.

HUTCHESON, Circuit Judge (dissenting).

That part of the purported fact finding of the District Judge, that "the money provided by the City was not to constitute any part of the assets of the defendant bank, nor intended to go into the general funds of said Bank," on which my associates rest their affirmance of his judgment, is, if supported by the record, sufficient to sustain the judgment and affirmance. The fatal defect in the judgment and its affirmance is, that though denominated a fact finding, it is merely a fiating, a legal conclusion incorrectly drawn as to the effect of agreed and undisputed facts. These are: That the terms and conditions of the bonds and interest coupons stipulate that they were payable at Britton & Koontz National Bank; that from 1927, when they were issued, until 1933, when the bank was closed, they were paid by the bank out of moneys deposited with it by the city. These moneys were deposited at the teller's window, where general deposits were taken in due and ordinary course. A deposit slip was received for each deposit, the money was carried into the general funds of the bank and the coupons which it was to pay were paid by the bank, not out of any specific money, but out of its general funds. This is the stipulation:

"That in complying with the terms and conditions of the bonds and the coupons thereto attached, funds for the payment of the bonds and coupons upon the above mentioned specific dates of each year were deposited in Britton & Koontz National Bank by the City of Natchez for the purpose of the payment of said interest coupons and the payment of said bonds as said bonds and coupons should be presented to said bank by the holders and owners thereof, and that on the date that each deposit was made to Britton & Koontz National Bank had knowledge of the fact that the deposits were made by said City of Natchez for the purpose of paying said bonds and coupons as they matured, and were presented to said Bank for payment.

"It is further agreed that at the time of the deposit herein made and throughout the entire time that deposits were made for the purpose of paying said bonds and

coupons the City of Natchez had no other deposit account or funds whatsoever with the Britton & Koontz National Bank.

"It is further agreed that at the time of the making of said deposits there was no agreement or understanding (other than may have been implied by law, if any) between the Britton & Koontz National Bank and the City of Natchez that the identical funds so deposited should be used by said Bank in the payment of said bonds and coupons, but the City of Natchez shall not be held to have waived nor to be estopped from arguing to the Court that the law implied such an agreement from the nature of the transaction.

"It is further agreed that the deposit in each instance made by the City in Britton & Koontz National Bank was in the exact amount of the coupons or bonds that were maturing shortly thereafter, if several deposits were made same aggregated said amount.

"That the City Warrants deposited by the City of Natchez were duly paid by the City Bank & Trust Company, the depository to the Britton & Koontz National Bank on or about the date of the maturity of the respective bonds and coupons and said moneys were carried in the 'Coupon Fund for the City of Natchez' account by Britton & Koontz National Bank."

Nothing was ever said or done by the bank or city to raise or support any inference except that of a general depositing in accordance with the custom of the bank. It is elementary that no trust was raised or created thereby in favor of the bondholders. Staten Island Cricket & B. B. Club v. Farmers' Loan & Trust Co., 41 App.Div. 321, 58 N.Y.S. 460; Trusts Restatement, § 12, p. 45; Noyes, Rec'r, v. First National Bank, 180 App.Div. 162, 167 N.Y.S. 288, affirmed Noyes v. First National Bank, 224 N.Y. 542, 120 N.E. 870.

The amounts deposited stood and remained as a credit to the city, and subject to its withdrawal until actually applied to the payment of the bonds and coupons. It is equally elementary that all deposits in a bank are general unless at the time of making there is a definite, special agreement to the contrary. It is therefore elementary law that the presumption with reference to a bank deposit is that it is general, in the absence of evidence to the contrary. Borgess Hospital v. Union Industrial Trust & Savings Bank, 265 Mich. 156, 251 N.W.

363; Jennings v. United States F. & G. Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248; Keyes v. Paducah & I. R. R. Co. (C.C.A.) 61 F.(2d) 611, 86 A. L.R. 203; Santee Timber Corporation v. Elliott (C.C.A.) 70 F.(2d) 179, 93 A.L.R. 874; Pres. and Directors of Manhattan Co. v. Blake, 148 U.S. 412, 13 S.Ct. 640, 37 L. Ed. 504. Cf. Morse Banking Vol. 1, § 289; Bouvier, p. 293; Webster's Dictionary "Deposit (a)."

Here there was neither agreement to separate, nor separation, of funds. The contrary was definitely agreed to and affirmatively established by undisputed evidence. Some excerpts from the agreed statement and from the undisputed testimony will make more clear than argument can, that the judgment ought not to stand.

The agreement goes on to state that on the 15th day of August, 1927, and on each payment date thereafter, the City of Natchez gave a check upon its depository to Britton & Koontz for the exact amount of interest due. That this check was received by Britton & Koontz, presented to the city's depository, and the money was paid to Britton & Koontz "for the payment of said interest coupons when same should be presented to said Britton & Koontz National Bank for payment."

*"But it was never agreed between Britton & Koontz National Bank and the City of Natchez nor said depository that the identical money paid to said Britton & Koontz National Bank by said depository upon the presentation of said warrants was to be used by said Britton & Koontz National Bank for the payment of said bonds and coupons or held separate from the other funds of said Bank,* but nothing herein contained shall be construed to estop the City, nor held to be a waiver by it, from contending to this Court that such *was the legal effect of the transaction* between the Britton & Koontz National Bank and the City relative to said deposits."* (Italics mine.)

As to the particular funds in question, the agreement states that on February 15, 1933, for the purpose of paying the bonds and coupons falling due on said date, warrant of the City of Natchez of that date was drawn on the city depository payable to Britton & Koontz, and delivered on that date to that bank. It was promptly presented, and payment was received on the 16th of February. It was then passed into the account entitled "City of Natchez Cou-

pon Account" and a deposit slip was on that date issued by the Koontz bank to the city, just as had been done in all other cases of issuances of city warrants by the city to Britton & Koontz, to provide it with necessary funds to pay off the bonds and coupons as they might fall due, "Said receipt showed that the money was in February 16, 1933 deposited in said Bank in said City of Natchez Coupon Account." Of this indebtedness thus incurred all except $5,125, had been paid on account of coupons when the bank failed.

Not in contradiction, but in complete and full support of the agreed statement, the following testimony was taken:

Richardson, vice-president of the bank, testified to continually receiving deposits from the city for the payment of bonds and coupons. After testifying that the deposits were made to the bank for the purpose of meeting coupons and bonds falling due shortly after the deposit was made, he testified:

"The deposit was just made as a regular deposit, There was no understanding that it would be segregated from other deposits whatever."

He further testified: "In each case the deposit slips were made out as deposits were made, on the regular deposit slips of the bank such as all customers receive for ordinary deposits made there."

He further testified that nothing was said or understood that such funds should not be commingled with other bank funds and that they were always commingled. The deposit slips offered in evidence were the same as other general deposits received.

Conner, the city clerk testified in answer to questions:

"When you took the City warrant around to the teller you merely made deposit of that warrant, didn't you? You had no particular agreement with him as to how he was to handle the money? A. No. I merely announced that it was a check for our coupons or bonds due that day.

"Q. And you left the money there, and in some instances you got a deposit slip and in some instances you did not? A. Subsequently I received from the Britton & Koontz National Bank a deposit slip.

"Q. You didn't follow up what the Bank did with the money, did you? A. No, we had no control over it.

"Q. You had no agreement with the bank other than they were to use it to take care of the coupons and bonds? A. No, sir.

"Q. You didn't have an agreement, with them that they were to keep that segregated, did you? A. No sir; merely made those payments."

Bowie, the teller, testified that he had taken five of the deposits. In answer to the question—Q. Was there any agreement had by you, representing the Bank, with Mr. Conner, City Clerk, or any other representative of the City, that those deposits should be treated any different from any other deposit that the bank took at the time—

"A. Accepted as a regular deposit.

"Q. Were any instructions ever given to you by anybody representing the City to segregate these deposits from the other deposits of the bank? A. No sir."

He further testified on cross-examination:

"Q. As I understand your testimony, there was no special understanding or agreement about it? Nothing was said as to segregating or as to a trust account or what? A. There was no agreement or understanding about it at all. No contract or anything made. Our duplicate deposit slip was accepted.

"Q. Were you ever told by any person representing the City that they wanted this held as a deposit, as a trust deposit? A. No, because if he had we would have had to put bonds up to secure it."

Mr. Woolley testified that the books showed that this account, Natchez bond account, was not kept any different from any other open general deposit of accounts on the books of the bank.

"It was one of the general deposit accounts, and so showed on the books of the bank."

"Nothing other than the regular credit was given to the City of Natchez by virtue of the deposits made in each instance. The amounts represented by the deposits were not kept separate and distinct from the general assets. They were merged with the general funds of the bank and the books reflect no agreement of any kind that the funds should be treated differently from any of the deposited funds in the bank."

Conner testified as to the manner of depositing that he went to the teller's window where regular deposits in the bank are

made, other people depositing there. He didn't tell the teller at any time that the money was to be kept separate from any other money. "I simply told him, 'Here is the money to pay our bonds and coupons due today.'"

Mr. Bowie, the teller, recalled, in answer to the question, "Were you given any instructions by the City Clerk to hold those funds separate from any other funds or deposits in the bank?" answered, "None were given. If that had been the case I could not have taken the deposit, because it would have been a trust fund and it would have had to go through an officer of the bank. The deposit just happened like any other deposit in the bank's course of business. The funds were kept in the individual checking account, regular funds of the bank."

In the face of these facts the finding that the money was not to constitute any part of the assets of the bank must fall. In the face of these facts, if there had been such an agreement, there would have been no trust for the agreement was breached, and not complied with.

My associates, in addition to being misled by the finding of the District Judge, have I think, been further misled by the sections of the Mississippi Code they cite and rely on. These sections, in my opinion, have nothing to do with the case, either in fact or in law. In fact, because the city clerk does not claim that he took the money to the bank under these sections. It is undisputed that he took it there the day the coupons became due, instead of five days before, and it is further undisputed that the bank charged no commission as provided for by the statute. But, if it be considered that all of the proceedings were under the statute, it would still have no bearing, for that statute has nothing to do with the question at bar as to whether the deposit was special or general. It merely regulates and controls the actions of city officials in getting moneys to the bank. It has no bearing upon the situation and standing of the funds after they get there.

As to the provision of the statute that the bank shall act as paying agent, it is settled by the authorities heretofore cited, particularly President and Directors of Manhattan Co. v. Blake, 148 U.S. 412, 13 S.Ct. 640, 37 L.Ed. 504, that this fact does not in any sense tend to create a special deposit or trust. The bank, under the facts here, stood in two relations, that of a deposi-

tory of funds for which it was and is debtor to the city, and that of an agent of the city in paying the funds out under the Mississippi statute, section 2743 of the Code, which provides: "Where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon."

The authorities above cited make it clear that the fact that the bank is an agent to handle funds of this kind has no effect to make deposits with it, trust funds.

This court has consistently maintained the position that the distribution of the funds of a failed national bank must be made in accordance with the principles of equal distribution, required by the federal statutes, and that one who claims a preference must clearly show his right to it.

With deference, no element of right to a preference appears here.

I respectfully dissent.