1002

## In re KOUNTZE BROS. et al.

District Court, S. D. New York.
July 28, 1938.

Allen R. Memhard and Henry A. Jones, both of New York City, for trustee.

Thomson, Wood & Hoffman, John H. Hoffman, and W. Morton Carden, all of New York City, for City of Los Angeles, Cal.

McLanahan, Merritt & Ingraham and Burgess Osterhout, all of New York City, for City of Grand Junction, Colo.

Zabriskie, Sage, Gray & Todd and Melber Chambers, all of New York City, for New Mexico reclaimants.

Olney & Comstock and Irving Smith, Jr., all of New York City, for Big Horn County, Wyo.

Gould & Wilkie, M. S. Lockhart and John F. Boyer, all of New York City, for Board of Trustees of the Sinking Fund of City of Canton, Ohio.

BONDY, District Judge.

These are petitions to review the orders of the referee in bankruptcy dismissing the reclamation petitions of the City of Los Angeles, California, the City of Grand Junction, Colorado, twenty-two political subdivisions of New Mexico, Big Horn County, Wyoming, and the Board of Trustees of the Sinking Fund of the City of Canton, Ohio.

These reclamation proceedings were instituted to recover moneys forwarded to Kountze Brothers, private bankers in the City of New York, for the purpose of paying bonds and interest coupons of the reclaimants presented for redemption at the office of Kountze Brothers. The reclaimants alleged that the moneys were received by the bankrupts as trust funds, that they were deposited in the bankrupts' account with the Central Hanover Bank & Trust Company, and that they are part of the balance of $183,355.65 in that account which has passed into the hands of the Irving Trust Company as trustee in bankruptcy of Kountze Bros., who were adjudicated bankrupts on November 12, 1931.

After reversal of two separate orders of the referee in bankruptcy dismissing the reclamation petitions on the ground that the bankrupts' credit balance in the Central Hanover Bank & Trust Company had been entirely depleted by withdrawals, In re Kountze Bros., D.C., 4 F.Supp. 679; In re Kountze Bros., 2 Cir., 79 F.2d 98, 102 A.L.R. 367; certiorari denied, 296 U. S. 640, 56 S.Ct. 173, 80 L.Ed. 455, the referee determined the petitions on their merits and entered orders dismissing them on the ground that the reclaimants had not established the existence of any trust relationship.

The reclaimants disclaim any contention that the arrangements under which they deposited funds with the bankrupts created a trust in favor of the bondholders. See Staten Island Cricket & Baseball Club v. Farmers' Loan & Trust Co., 41 App.Div. 321, 58 N.Y.S. 460; Noyes v. First National Bank of New York, 180 App.Div. 162, 167 N.Y.S. 288; affirmed, 224 N.Y. 542, 120 N.E. 870; In re Interborough Consol. Corp., 2 Cir., 288 F. 334, 32 A.L.R. 932; certiorari denied, 262 U. S. 752, 43 S.Ct. 700, 67 L.Ed. 1215; Guidise v. Island Refining Corporation, D.C., 291 F. 922; Schloss v. Powell, 4 Cir., 93 F.2d 518. Each reclaimant contends that while the deposits were subject to its control until paid out in redemption of the bonds and coupons, the deposits were special in character in view of the purpose thereof and the particular course of dealing between the reclaimant and the bankrupts.

A bank deposit is special when the bank occupies the position of bailee and title to the deposit remains in the depositor. It is a general deposit when title to the deposit passes to the bank and the latter has the right to use it for its own profit, and is bound only to refund the same amount, or any part thereof, usually on demand. Marine Bank v. Fulton County Bank, 69 U.S. 252, 17 L.Ed. 785; Commercial Nat. Bank v. Armstrong, 148 U.S. 50, 13 S.Ct. 533, 37 L.Ed. 363; Pitts v. Pease, 5 Cir., 39 F.2d 14; Keyes v. Paducah & I. R. Co., 6 Cir., 61 F.2d 611, 86 A.L.R. 203; Kershaw v. Kimble, 10 Cir., 65 F.2d 553; Union Electric Light & Power Co. v. Cherokee Nat. Bank, 8 Cir., 94 F.2d 517. In the absence of an agreement or proof to the contrary, a deposit in a bank is presumed to be general rather than special. Keyes v. Paducah & I. R. Co., 6 Cir., 61 F.2d 611, 86 A.L. R. 203; Union Electric Light & Power Co. v. Cherokee Nat. Bank, 8 Cir., 94 F.2d 517. The reclaimants herein bear the burden of establishing that the deposits were special. City of Lincoln, Neb., v. Ricketts, 8 Cir., 77 F.2d 425; reversed on other grounds, 297 U.S. 373, 56 S.Ct. 507, 80 L.Ed. 724; Union Electric Light & Power Co. v. Cherokee Nat. Bank, 8 Cir., 94 F.2d 517.

The mere fact that the funds were here deposited for a special purpose, name-

ly, the payment of bonds issued by the reclaimants, is quite consistent with the ordinary debtor-creditor relationship. Manhattan Co. v. Blake, 148 U.S. 412, 13 S.Ct. 640, 37 L.Ed. 504; Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288; Keyes v. Paducah & I. R. Co., 6 Cir., 61 F.2d 611, 86 A.L.R. 203; Santee Timber Corp. v. Elliott, 4 Cir., 70 F.2d 179, 93 A.L.R. 874; City Council of Charleston, S. C., v. Elliott, 4 Cir., 73 F.2d 920; City of Lincoln, Neb., v. Ricketts, 8 Cir., 77 F.2d 425; reversed on other grounds, 297 U.S. 373, 56 S.Ct. 507, 80 L. Ed. 724; Great Atlantic & Pacific Tea Co. v. Citizens' Nat. Bank, D.C., 2 F.Supp. 29; affirmed, 3 Cir., 66 F.2d 883; American Law Institute, Restatement of Trusts, Sec. 12(h). Section 12(h) of the Restatement of Trusts reads in part: "If money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes. * * * Illustration: 15. A, a corporation, deposits $10,000 with the B Bank for the purpose of paying interest coupons about to mature. In the absence of evidence showing a contrary intention, B is not trustee of the money either for A or for the holders of the coupons."

■ In the case of the City of Los Angeles, the arrangement whereby the city transmitted funds to Kountze Bros. twenty days before the maturity dates of its bonds and coupons definitely stamps the relationship as that of debtor and creditor and entirely supports the finding of the referee. The city, which did not pay Kountze Bros. any commission or other compensation for their services, offered no explanation of the purpose of this arrangement, which existed from at least 1908 until 1931. Yet the city treasurer, who occupied that office since 1916, testified that he had some familiarity with the banking business and that on several occasions Kountze Bros. solicited him to employ his influence to obtain their designation as paying agents for future bond issues. Counsel for the city assert that Kountze Bros. were acting as a "mere gratuitous agent". Kountze Bros., however, did not regard their activities as philanthropic in character. An official of the bankrupts testified that they required the municipalities, counties and other political subdivisions whose bonds were redeemable at their office, either to pay them a commission on bonds and coupons paid by them, or to deposit their funds with them twenty or thirty days in advance. When the latter method was employed, no charges were made because "these funds were all deposited in one bank account and from that bank account loans were made in the Street and when call money was six or eight per cent. it was much more profitable to loan the money out that way than to charge one-eighth or one-quarter of one per cent." The inference is almost irresistible that the parties contemplated that Kountze Bros. would enjoy the free use of the funds of the City of Los Angeles pending the presentation of bonds and coupons for payment.

An important element in the case of the City of Grand Junction is the fact that the city felt itself free to draw checks and drafts on its account with the bankrupts for purposes other than the payment of its bonds and coupons. On one occasion the city placed in its account with the bankrupts $25,000 which it had had on general deposit in a local bank, simply because it had an excess of funds in its local banks. It also had an arrangement with Kountze Bros. whereby it was enabled to overdraw its account.

■ Three witnesses for the reclaimant, Big Horn County, testified that in 1929 the reclaimant wrote to Kountze Bros. requesting them to forward collateral to secure the county's deposits with them, and that Kountze Bros. refused this request and assigned as one of the reasons for their refusal the fact that the deposits were "trust funds." Neither the original letters nor copies thereof were produced. The referee found that the reclaimant had not established the existence of this correspondence. The court finds no reason to disturb this finding.

All the reclaimants accepted monthly statements from Kountze Bros. which read, "Dr. (name of reclaimant) in account with Kountze Brothers, Cr." In acknowledging remittances from the reclaimants, Kountze Bros. stated that the funds transmitted would be "credited" to or placed to the "credit" of the sender, at times adding, "noting your instructions." None of the reclaimants established that it ever required or requested Kountze Bros. to segregate the funds transmitted, from the bank's general funds, or not to use the

funds in their own business, or indeed that it made any inquiry concerning the custody or use of the funds.

All the reclaimants except Los Angeles paid a commission to Kountze Bros. for paying their bonds and coupons. This fact is quite consistent with a debtor-creditor relationship. The payment of bonds and coupons at the office of Kountze Bros. involved considerable labor, including bookkeeping and sending notices, acknowledgments of remittances and monthly statements, as well as rendering other usual and incidental services. Inasmuch as Kountze Bros. did not require these reclaimants to maintain a minimum balance or to remit their funds more than a day or two before the maturity of the bonds and coupons, the free use of the funds pending presentation and payment of bonds and coupons would not assure adequate compensation for the bank's services.

The language of Mr. Justice Blatchford in Manhattan Co. v. Blake, 148 U.S. 412, 425, 13 S.Ct. 640, 644, 37 L.Ed. 504, is quite appropriate here, "The plaintiff occupied two relations to the state,—one that of debtor as a bank for the money deposited with it by the state, and the other that of agent of the state to pay out from the money deposited, if it remained on deposit, money for certain specified purposes."

The fact that the funds which were raised for the purpose of redeeming the bonds of the reclaimants may have constituted trust funds in the hands of the reclaimants did not prevent their general deposit in a bank. Santee Timber Corp. v. Elliott, 4 Cir., 70 F.2d 179, 93 A.L.R. 874. The City of Los Angeles and Big Horn County assert that under the laws of California and Wyoming, respectively, general deposits of these funds were restricted to authorized depositories located in these states. A reading of the statutes relied upon by them does not sustain their contention. Constitution of California (Deering, 1931) Art. XI, secs, 16, 16½, 17; Calif.St. of 1927, c. 740, p. 1388, sec. 1; Wyoming Comp.Stat. (1920) secs. 2964–2968, 1343, 1345, 1353, 1354, 2365, 2368, 2369, 2371, 2376, 2381; Wyoming Rev.Stat. (1931) secs. 92-118 to 92-122, 29-717, 29-719, 29-727, 29-728, 99-1001, 99-1005, 99-1006, 99-1008, 99-1013, 99-1018. The laws of these states, expressly in the case of California, and impliedly in the case of Wyoming, authorized the deposit of these funds in banks outside the state for the purpose of redeeming bonds payable at such banks. Calif.St. of 1927, c. 740, p. 1388, sec. 1; Wyoming Comp.Stat. (1920) secs. 1345, 1355; Wyoming Rev.Stat. (1931) sec. 29-719. While the laws may have the effect of limiting deposits outside the state to deposits made for this purpose, it is nowhere prescribed that such deposits must be special, rather than general, in character. But cf. Woolley v. City of Natchez, 5 Cir., 89 F.2d 937, and note the dissenting opinion of Hutcheson, Circuit Judge. Even assuming that the rule that a bank becomes a trustee of deposits made by a political subdivision of a state in violation of the laws of the state, Board of Commissioners of Crawford County, Ohio, v. Strawn, 6 Cir., 157 F. 49, 15 L.R.A.,N.S., 1100; United States Nat. Bank v. City of Centralia, 9 Cir., 240 F. 93; certiorari denied, 243 U.S. 656, 37 S. Ct. 482, 61 L.Ed. 949; American Surety Co. v. Jackson, 9 Cir., 24 F.2d 768; Fiman v. State of South Dakota, 8 Cir., 29 F.2d 776; certiorari denied, 279 U.S. 841, 49 S.Ct. 254, 73 L.Ed. 787; First Nat. Bank v. Fidelity & Deposit Co., 9 Cir., 48 F.2d 585; Cook v. Elliott, 4 Cir., 73 F.2d 916; cf. Woolley v. City of Natchez, 5 Cir., 89 F.2d 937, extends to the case of a bank transacting business in a different state, as here, that rule is not applicable to the case at bar, because the deposits, though general in character, were not made in violation of any law. Even had the deposits been unauthorized, this alone would not have constituted the bank a tort-feasor in accepting them. "In the absence of fraud or other wrongdoing, which is not here asserted, it is only where a bank receives deposits in violation of a statute clearly forbidding them that it is held as a trustee ex maleficio." American Surety Co. v. Waggoner Nat. Bank, 5 Cir., 83 F. 2d 99, 101.

Accordingly, there is no reason to disturb the rulings of the referee. The petitions to review therefore are dismissed and the orders of the referee confirmed.